## RITCHIE v. DORLAND, et al.

A bill in Chancery, in the nature of a "Bill of Peace," and praying for a discovery
against joint and several tresspassers on real estate, will not lie in favor of a plaintiff
out of possession, claiming title to the land.

Bills of this character will not lie in cases where the party has a plain, speedy and
adequate remedy at law.

In this State, the jurisdiction of Courts of Equity over questions of title to real estate,
acquiesced in to avoid the consequences of the fictitious actions of ejectment at com-
mon law, has no existence; as those actions must be prosecuted in the name of the
real party in interest, and the plaintiff may join any number of parties, defendant,
without regard to the extent or character of their possession, subject only to their
right to answer separately, and have separate verdicts.

Appeal from the District Court of the Seventh Judicial District,
county of Solano.

The plaintiffs filed their bill in chancery claiming a discovery and
praying for a decree quieting plaintiff's title to a portion of a certain tract
of land in Solano county, known as "Suisun," and restoring plaintiffs to
the possession thereof, against the defendants and some three hundred
other persons, who are alleged to be trespassers on said land, though the
extent of the possession of each is unknown to plaintiffs. Plaintiffs aver
that they are the owners of the land by a clear and perfect title derived
from the Mexican Government, and in possession of a part thereof, and
that their title to the same has been judicially passed upon in the United
States' District Court, in an action brought by Persifer S. Smith, hold-
ing under the same title, against Dorland, one of the defendants for the
recovery of another portion of the tract called "Suisun," of which the
land is question in this action forms a part. The bill avers that by reason

of the great number of said trespassers it was impossible to sue them all without great expense, and that it would be *impracticable* to bring the suits to trial by reason of deaths, abatements, etc., and that the defendants are insolvent, and all hold posseession as settlers, claiming that the land belongs to the United States.

Defendants demurred; the demurrer was sustained, and judgment entered for defendants, from which plaintiffs appeal.

*Jo. G. Baldwin and Wm. Gouverneur Morris* for Appellants.

1. A Bill of Peace will lie for the objects indicated in the complaint. The bill charges that plaintiffs have made defendants of enough of the multitude of trespassers to fairly represent them all, and to rebut any presumption of fraud or collusion, and that it is impracticable to bring them all into Court. If a way can be contrived by which the right of the holder of the property can be made consistent with the rights of the contestants, that should be the rule in a Court of Equity. By a decree against all, in a proceeding against so many, representing the same interest or right, giving at the same time a remedy to the parties not actually before the Court, by allowing them to come in and show cause against the decree, the interest of all would be protected.

Story's Eq. Pl. §§ 97, 120; Mitford's Ch. Practice, (Pleadings) p. 168, *Title Demurrers*. Adair *v.* the New River Company, 11 Vesey, 444. The plaintiff's bill avers a clear and definitive title to the land in dispute, and that the defendants are mere naked trespassers, who have no standing in Court on their own merits or title, and are, therefore, bound by the judgment rendered against the title of the United States to the land, in the case of Smith *v.* Dorland.

Mitford's Ch. Pl., p. 169, and cases there cited. Courts of Equity will interfere to prevent a multiplicity of suits. 1 Vernon R., 266.

It by no means follows that because the plaintiff has a legal right, he may not sue for it in equity, when the question is mixed up with equitable circumstances. Wright *v.* Hunter, 5 Ves., 794; Baker *v.* Dacie, 6 Ves., 688; Lady Arundell *v.* Phillips, 10 Ves., 148; 2 Swanston, 545; Newman *v.* Milner, 2 Ves., 483; 1 Vernon, 22 and note; Mayor of York *v.* Pelkington, 1 Atk., 282.

So a person possessed of a fishery was allowed to file a bill to perpetuate testimony and establish his right, though he had not recovered in affirmance of it at law. Duke of Dorset *v.* Girdler, Pr. Ch., 531.

In the cases of mines and collieries, Courts of Equity will entertain a bill *quia timet*, and bill of peace, when there is danger that the mine will be ruined before the right can be established at law. Lord Falmouth *v.* Innys, Morseley's R., 87, 89; Bush *v.* Western, Prac. Ch., 530; Viner's Ab. Title, *Chancery.*

The plaintiff's title being definitely settled by the record, no trial is necessary between plaintiff and defendants to support or affirm that title, involving our right to sue. *See, directly in point*, Reed *v.* Gifford; Hopkins' Ch. R., 418.

The rule in Arkansas is, that it is no objection to the jurisdiction of

a Court of Equity, that the party has a remedy at law, unless the latter is plain, direct and complete. Wilfer *v.* Arnelt, 3 Eng., 57; Black *v.* Bowman, 4 Eng., 501.

Where a person has a common right against a great number of persons, as he can not contend with the whole community, a Court of Equity will permit him to file a bill against some of them, taking care to bring so many persons before the Court, that the interests of all will be protected; and when a decree is obtained in such case against the defendants, the Court will carry the benefit of it into execution against the others who were not parties. Weals *v.* West Middlesex Water Co., 1 Jac. & Walk., 369; Hichens *v.* Congreve, 4 Russell, 577; Apperly *v.* Pagel, 1 Phil. Ch. R., 780.

For the doctrine of Courts of Equity, on this question, see Cockburn *v.* Thompson, 16 Vesey, 325; Walworth *v.* Hoit, 4 Russell, 635, and cases cited in note to the latter case; 18 Eng. Ch. R., 635, note to Am. Ed.; Richardson *v.* Hastings, 29 Eng. Ch., 327; Adams' Eq., 586; Jeremy Eq. Jurisp., 344; City of London *v.* Perkins, 4 Bro. P. C., 157; 2 Story's Eq. Jurisp. § 586; Story's Eq. Pl., §§ 121, 124.

"To entitle a party to maintain a bill of peace it must be clear that there is a right claimed, which affects many persons, and that a suitable number of persons are brought into Court." Disney *v.* Robertson, Burb., 41. This, we contend, is the true rule and the only test required. Adams' Eq., 588–9; Edwards' on parties in Ch., p. 5; Harvey *v.* Harvey, 4 Beavan, 215; the Attorney General *v.* Jackson, 11 Vesey, 372; Meux *v.* Maltby, 2 Swanston, 282; Smart *v.* Bradstock, 4 Beavan, 499, and cases cited; Milligan *v.* Mitchell, 3 Mylne & Craig, 84; Congers *v.* Lord Abergavaney, 1 Atk., 285, 1 Daniels' Ch. Pr., 319, 321, 2 Story's Eq. Jur., § 857; Hallet *v.* Hallet, 2 Paige Ch. R., 15; Joy *v.* Wirtz, 1 Wash., C. C. R., 519; West *v.* Randall, 2 Maine, 195; Maun *v.* Butler, 2 Barb. Ch., 367; Watkins *v.* Worthington, 2 Bland's Ch. R., 584; Baird *v.* Bland, 3 Munf., 570; Carey *v.* Haxey, 3 Geo., 645; Smith *v.* Swormstedt, 16 Howard, 303; Wickliff *v.* Owings, 17 Howard, 47.

By the cases above cited it will be seen that the same doctrine is held in the English and American Courts of Equity. No privity is required betwcen the parties to be affected by the decree, but only a common and general interest.

If the Court should hold, notwithstanding the above authorities, that a trial at law is absolutely necessary to determine the right to sue these defendants, before we can be entitled to the relief demanded, it by no means follows that the present defendants should have been defendants in such trial. It is sufficient, if the principle be true at all, that the *right* only should have been determined. Huntington *v.* Nicole, 3 Johns. R., 590. Such a trial could only be to try the plaintiff's title, which, in this case, is admitted, and there could be no issue to try, if a trial were ordered. Trustees of Louisville *v.* Gray, 1 Litt. (Ken.) R., 148; 2 Story's Eq., § 859, and p. 176; Willard's Eq. Jurisp., p. 323; 2 Waterm. Eden on Ijunc., 417; Lord Jenham *v.* Herbert, 2 Atk., 483;

Duke of Norfolk *v.* Myers, 4 Madd. Ch., 50; Mallow *v.* Hinde, 12 Wheat., 194.

2. The ground is taken that the plaintiffs are not in possession, and are, therefore, not entitled to the relief sought in the bill. The possession of defendants is asserted in the bill to be tortious, such possession as can be obtained by a naked trespasser, without any abandonment by the owner; such a possession as would not avail against the plaintiff in a trial depending on the mere title by possession. Jones *v.* Nunn, 12 Geo., 469. By such possession, so obtained by the defendants without fault of plaintiffs, the latter lose no rights which they had either by title or possession.

*Wm. Duer* for Respondents.

1. There is a misjoinder of defendants having distinct and separate claims and possessions, and not united in interest.

2. The bill asks for a decree against a large number of persons not made parties to the action. No judgment can be rendered against one who has not been served with notice of the proceedings. Low & Hill's notes, part 2, p. 111–119; 191–193, Code, §§ 17–35. The only exception being the case of joint debtors, and there the rights of parties not served are protected. Code, §§ 32, 368.

3. The only ground on which the bill can be sustained is, that it is a bill of peace, and falls within the principles and rules of Courts of Equity. As such it is defective. 1st, because its object is not to *settle a right*, but *to try a title to land*, and 2d, because such bills only lie to sustain actual possession. There are two kinds of bills of peace. The first relates to incorporeal rights, the second to titles to land. This last, under which this case must fall, had its origin in the fictitious character of actions of ejectment. These bills are now obsolete, the necessity for them, which was the ground for the interposition of Courts of Equity, has ceased to exist. As to the second objection, it is believed that there is no exception to the rule that the bill lies only to *quiet a possession*, and can be filed only by a party in possession, and in case of ejectment that there must have been at least *two trials at law*. Story's Eq. Jurisp., §§ 852–856, 759; Mitford's Eq. Pl. by Jeremy, 145, 146, cited 2 Story Eq. Jurisp., § 854, note 2. It is also to be observed that though bills of peace may be sustained where the interests of persons not actual parties to the suit may, in some measure, be affected by the decree, and that such decree will bind all other persons standing in the same predicament, yet that such persons must be made actual parties where the decree must directly affect their interests, and that they have a right to be heard before the decree is made. Story's Eq. Pl., §§ 120, 130. A distinction must be taken between the objection to the complaint, on the ground of misjoinder of parties or multifariousness, and that, taken on the ground of its want of equity. This will explain many of the cases cited for appellant.

In this case the plaintiffs show no equity—they are out of possession—they claim a legal title—they have never established their right

at law, and they seek to conclude the rights of persons, not parties, and to turn them out of possession.

4. There is an improper joinder of actions, one of which is legal in the nature of an action of ejectment, and the other equitable in the nature of a bill of peace.

5. The plaintiffs have no right to a discovery, nor to an account. Code, § 417; Story's Eq. Jur., §§ 1490, 459, 511, *et. seq.*

6. The plaintiffs give no description of the land, except the description of the whole tract called Suisun, of a part of which they admit themselves to be in possession, and of another part that P. F. Smith is the owner.

*Thos. M. Swan* for Respondents.

The plaintiffs have an adequate legal remedy, and, therefore, there is no ground for the interposition of a Court of Equity.  Story's Eq., § 616.  The plaintiffs ask for a discovery.  To maintain the jurisdiction in equity, on that ground, the bill should allege that the facts are material, and that the discovery sought is indispensable, and that the plaintiff is unable to prove the facts by other testimony.  Story's Eq., § 74.  Moreover the jurisdiction does not obtain under the laws of this State. Code, §§ 417, 418.

Actions to quiet title are defined by our code, § 254, by which it is clear that the action can only be maintained by a party in possession.

The complaint does not sufficiently aver title, for though it sets up a title derived from the Mexican Government, it does not show that it has ever been presented to the Land Commissioners, without which they have been forfeited under the act of Congress.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice TERRY concurred.

The plaintiffs filed a bill in chancery in the Court below, in the nature of a "Bill of Peace," alleging that they were the owners in fee of a tract of land known as "Suisun."   That the defendants, with many others, have intruded upon said land, and claim to hold the same by virtue of the pre-emption laws of the United States.   That one Smith, who derived title from the plaintiffs, grantor for a portion of the said land, had recovered judgment in the United States District for the same against James Dorland, one of the defendants in this action.

The plaintiffs claim a discovery against Dorland and three hundred other persons, of the title to the parts or parcels of the tract which they claim, and the length of time they have occupied the same; a judgment declaring the title of the plaintiffs valid against the defendants, and all other settlers or persons upon the land, in like condition; a recovery of the possession against the defendants, as well as all other persons; and an account of the rents and profits, &c.

The defendants demurred; the demurrer was sustained, and the plaintiffs appeal.

A "Bill of Peace" is said to be a bill brought by a person to estab-

lish and perpetuate a right which he claims, and which from its nature may be controverted by different persons at different times, and by different actions, or where separate attempts have been made to overthrow the same right, and justice requires that the party should be quieted in his right.

In such cases a Court of Chancery, in furtherance of the policy of the law, will interpose to prevent harassing litigation, and perpetually enjoin those claiming adversely from prosecuting their claims against the person showing himself clothed with the legal right. ʻThese bills are resorted to where several persons claim a right as against one or more, or one or more against many, and in such cases, the rule which requires all persons interested to be made parties is relaxed; and Courts of Equity allow only a sufficient number of persons to be made parties, to honestly and fairly defend the rights involved. In general, it will be necessary for the plaintiff to establish his right at law, before he brings his bill; but this is not absolutely necessary, for a Court of Chancery may require him to litigate his right in a Court of Law before granting the relief sought. Lord Rudsdale thus defines this jurisdiction: "Courts of Equity will also prevent multiplicity of suits; and the cases in which it is attempted, and the means used for that purpose, are various. With this view, where the general legal right is claimed against several distinct persons, a bill may be brought to establish the right. Thus, where a right of fishery was claimed by a corporation throughout the course of a considerable river, and was opposed by the lords of manors, and owners of land adjoining, a bill was entertained to establish the right against the several opponents, and a demurrer was overruled. As the object of such a bill is to prevent multiplicity of suits, by determining the rights of the parties upon issues directed by the Court, if necessary for its information, instead of suffering the parties to be harassed by a number of separate suits, in which each suit would only determine the particular right in question between the plaintiff and the defendant in it, such a bill can scarcely be sustained where a right is disputed between two persons only, until the right has been tried and decided upon at law. Indeed, in most cases, it is held that the plaintiff ought to establish his right by a determination of a Court of Law in his favor, before he files his bill in equity. And if he has not done so, and the right he claims has not the sanction of long possession, and he has any means of trying the matter at law, a demurrer will hold. If he has not been actually interrupted or dispossessed, so that he has had no opportunity of trying his right, he may bring a bill to establish it, though he has not previously recovered in affirmance of it at law, and in such a case a demurrer has been overruled."

The most familiar cases arising in the books, are those where some right is claimed by or against a numerous body; as where a parson claims tithes against his parishioners, or the parishioners allege a modus against the parson; where the lord of a manor claims a right against his tenants, or the tenants claim against the lord; where the owner of an ancient mill claims service to his mill of all the tenants of the par-

ticular district. In such cases, the only remedy would be by separate actions against each individual, and a judgment against one would not be binding upon any of the rest. Courts of Chancery have undertaken to remedy the evil by a proceeding in this nature.

"In order to originate this jurisdiction," says Mr. Adams, in his work on Equity, section 200, "it is essential that there be a single claim of right in all, arising out of some privity or relationship with the plaintiff. A bill of peace, therefore, will not lie against independent trespassers, having no common claim and no appearance of a common claim, to distinguish them from the rest of the community; as, for example, against several booksellers who have infringed a copyright, or against several persons who, at different times, have obstructed a ferry. For if a bill of peace could be sustained in such a case, the injunction would be against all the people of the kingdom.

"There are two cases which constitute apparent exceptions to this rule, which are known respectively as the ' Case of the Duties,' and the ' Case of the Fisheries.' "

Speaking of the second case, where the plaintiff claimed a fishery in the river Ouse, and filed a bill of peace against several trespassers, the same author says : " Lord Hardwicke's first impression was against the bill; but he ultimately allowed it, partly on the authority of the City of London v. Perkins, and partly because the defendants were in fact distinguished from the community at large, as being owners of adjacent grounds and as claiming fisheries in that character. The first of these grounds, as I have already suggested, is hardly warranted by the report of that case. The second ground appears to be that on which Lord Hardwicke mainly relied, and is consistent with the terms in which the case was spoken of by Lord Eldon."

An examination of this case (The Mayor of York v. Pellington et al., 1 Atkyns' Rep., 283,) affords no reason for the alteration of what seems to have been the rule before, or ground which changed the first impressions of the learned Chancellor upon the case.

There is another class of cases where bills of this kind are brought, viz : where a right claimed by an individual is indefinitely litigated by him without success.

"The necessity for bills of this class," says the same commentator, "originates in the nature of the action of ejectment, which is based on a fictitious dispute between fictitious parties, so that the rights of the real litigants are only indirectly tried. The consequence of this is, that the result of the action is not conclusive, but that fresh actions may be repeatedly brought, and the successful party harassed by indefinite litigation. In order to remedy this oppression, a jurisdiction has been assumed by the Court of Chancery; and a bill will lie after repeated trials at law and satisfactory verdicts, to have an injunction against further litigation. The right to this jurisdiction was formerly much questioned. Lord Cowper, in a celebrated case, where the title to land had been five times tried in ejectment, and five uniform verdicts given, refused to exercise it; but his decision was overruled by the House of Lords."

I have referred to various authors upon Equity Jurisprudence, for the purpose of ascertaining the cases in which bills of this character are sustained; and it may be fairly deduced from the whole current of authority, first, that they will not lie in cases where the party has a plain, speedy and adequate remedy at law.

It will be observed, that the jurisdiction of Courts of Equity over questions of title to real estate is only acquiesced in and admitted, to avoid the consequences growing out of the fictitious actions of ejectment, where one suit is no bar to another action. This doctrine has been exploded by the Legislature of this State, so far that it requires the action to be prosecuted in the name of the real parties in interest; and the decision of this Court, in the case of Winans et al. *v.* Christy, in which it was held that the plaintiff may join any number of parties defendant, without regard to the extent or character of their possession, subject only to their right to answer separately, or demand separate verdicts.

In a case like the present, we entertain no doubt that the District Court might compel those relying upon the same defence to proceed in the same trial, inasmuch as the determinaton of the controversy as against one would be conclusive as against all, and this we think will be found a sufficient remedy.

Again, we are not satisfied that this remedy is proper against joint and several tresspassers, or persons holding by several and distinct titles. The case of the Mayor of York *v.* Pellington et al., as before remarked, in which the right of a fishery was involved, seems to be an exception to this rule; and the danger and injustice of an application of the rule established in that case to actions like the present, could not be better illustrated than by the facts before us, the defendants claiming by every species of title imaginable.

In addition to what we have already said, we have been unable to find a single case among the authorities which we have had an opportunity to examine, where a bill like the present has been brought by a party out of possession; and it may well be doubted whether such a bill can be maintained by a party out of possession, particularly where no privity exists between him and the defendants. In the case of Leighton *v.* Sir Edward Leighton, (1 Peere Williams, 672,) which is cited as one of the leading cases on this subject, it does not appear whether the plaintiff had restitution of the premises after his recovery in ejectment or not. The case of the Trustees of the town of Huntington *v.* William Nicoll, (3 Johns. Reports, 566,) was not, according to the opinion of Chief Justice Kent, a bill of peace, but only an application to have the title tried under the superintendence of a Court of Chancery, so that there might be a final decision.

In speaking of the necessity of the plaintiff's first establishing his right by action of ejectment, the same Judge says, that this would be requiring the plaintiff to admit away his legal right or advantage by acknowledging the defendant's possession, which might defeat his recovery; that a jury had determined in favor of his right in an action

of trespass, and that he had, therefore, the best claim to be deemed in possession, and that the hazard and difficulty of bringing the ejectment should be thrown upon the adverse parties. This case goes further than any other American decision I have been able to find, in sustaining the present plaintiffs' right to maintain this form of action. But it will be observed that the learned Judge considered the plaintiffs in that suit as being in actual possession.

From a full examination of the whole case, we are satisfied that the plaintiffs' bill will not lie, and that the demurrer was well taken.

Judgment affirmed with costs.