NORTHERN PAC. R. Co. *v.* AMACKER *et al.*

(*Circuit Court, D. Montana.* April 13, 1891.)

RAILROAD GRANTS—ILLEGAL PATENT—EQUITABLE RELIEF—REMEDY AT LAW.
    A railroad company claiming land under a legislative grant, and having a legal title, if any, cannot, when out of possession, maintain a bill against parties claiming under a subsequent patent to determine title, on the ground that the exercise of equitable jurisdiction will prevent a multiplicity of actions, as in an action in the nature of ejectment plaintiff can join any number of parties defendant without regard to the extent or character of their possessions.

In Equity.    On demurrer to bill of complaint.
*F. M. Dudley* and *Cullen, Sanders & Shelton,* for complainant.
*Bach & Buck,* for defendants.

KNOWLES, J.    Plaintiff sets forth in its bill of complaint the grant to it of the alternate sections of land odd in number on the line of the definite route of its railroad constructed by it by virtue of an act of congress dated July 2, 1864; and facts sufficient also to show that all lands granted by said act within 40 miles on each side of the definite line of its road where it passes through Montana had vested in it, and that the land in controversy and described in the bill was upon an odd section within the limits of said grant.    Plaintiff also sets forth certain facts which it is claimed show that said land is not within any of the exceptions in said grant, and also facts showing or tending to show that the patent issued to the said Maria Amacker was obtained from the United States upon false suggestions, and that the same is a cloud upon plaintiff's title.    The prayer of the bill is:

"And your orator prays that your honors may decree that the said defendants, and each of them, have no estate or interest whatsoever in or to said lands or premises, and that the title of your orator is good and valid, and that the said defendants, and each of them, be forever enjoined and restrained from asserting any claim whatsoever in and to said land and premises adverse to your orator, and for such other and further relief as the equity of the case may require, and to your honors may seem meet."

The defendants interpose to plaintiff's bill a general demurrer as follows:

"That it appeareth by plaintiff's own showing by said bill that it is not entitled to the relief prayed by the said bill against the defendants."

We are here confronted with the proposition as to whether the bill does state facts sufficient to show that it has a right to appeal to the equity jurisdiction of this court.    There is no allegation in the bill that plaintiff is in possession of the premises described therein.    It is alleged that two of the defendants are in possession of certain lots which have been laid out on a portion of the same, and that the remainder of said premises is vacant, unimproved land.    This is an analogous case to that of *Railroad Co.* v. *Cannon,* 46 Fed. Rep. 224, decided this term.    The only difference appears to be that in that case one of the defendants procured a

patent to the premises in dispute, as it is alleged, upon the false representation that the premises named in the patent was mineral land excepted from the grant above named to plaintiff. In this case plaintiff sets forth certain facts which it is claimed show that the premises named in the bill were never excepted from plaintiff's said grant, and that, as the patent to the defendant Maria Amacker, under whom all the other defendants claim, was issued subsequent to plaintiff's grant, said patent was void. It was held by this court in the case of *Railroad Co.* v. *Cannon, supra,* that the title which the Northern Pacific Railroad Company received to the land granted to it within the limits of its grant was a legal title, and not an equitable one. It was also determined in that case that, having a legal title, plaintiff could not maintain an action in equity to have this court adjudge concerning the adverse claims to its land, or to remove a cloud upon its title to the same, without showing that it was in possession of the land concerning which it sought such relief; that, while in some of the states there were statutory provisions which allowed the bringing of such an action where the land was vacant and unoccupied, no such provision of law existed in Montana; and that without such a statute such an action could not be maintained. It was not denied but there might be equitable grounds for exercising chancery jurisdiction where the plaintiff had a legal title, and was not in possession of the land in dispute; that the equitable ground claimed to exist in that case was that the exercise of the equitable jurisdiction might prevent a multiplicity of suits. The court held, however, that the bill did not show that there was any multiplicity of suits to be prevented in that case. The court is confronted in this case with the same claim, that the exercise of the equity powers of the court will prevent in the controversy about the land in dispute a multiplicity of suits. In this case the allegations are more full upon this point than in the former. The bill makes 11 parties defendant, alleging that each claims some interest in or to the premises or to some part thereof, and then this allegation follows:

"And your orator further shows upon its information and belief that there are more than one hundred and fifty persons claiming some right, title, or interest in and to lots and blocks in said McLean Park addition, under said patent so issued to said Maria Amacker, as aforesaid, through mesne conveyances and instruments in writing from said Maria Amacker and John Amacker and their grantees; that the greater number of said instruments have not been recorded in the office of the recorder of Lewis and Clarke county, Montana, and your orator has no information, and cannot show to your honors, the names and residences of said persons, and such persons cannot, without inconvenience and oppressive delays, be all brought before your honors in this action."

And again:

"And your orator further shows that by reason of the great number of said defendants it will be necessary to bring a multiplicity of suits in order to maintain the rights of your orator in and to said premises, unless your honors should permit and allow the parties defendant herein to defend for their interests of these claimants of portions of said premises who are not expressly named as defendants, as well as for their own rights."

It is evident plaintiff holds to the view that, should it proceed at law, it would be obliged to institute a separate suit against each claimant in said premises. But this is not the case. The plaintiff would not be required to bring more than one action at law to determine the right of possession of said premises against all parties claiming the same, or any part thereof, who are in possession of any part of the same, or who, having deeds thereto, have exercised acts of ownership over it. Such has been the recognized practice in the courts of Montana; and in the state of California, from which Montana borrowed its Code of Civil Procedure, such has been the practice for years. In the case of *Ritchie* v. *Dorland*, 6 Cal. 33, the court held that plaintiff in an action in the nature of ejectment " could join any number of parties defendant without regard to the extent or character of their possessions, subject only to their right to answer separately or demand separate verdicts." It was held also in this case that, where the defense is the same in any action of this nature, the court could compel all to proceed in one trial. In the case of *City of San Francisco* v. *Beideman*, 17 Cal. 461, the supreme court of California says:

"Nor can the bill be maintained upon the ground of a prevention of multiplicity of suits. A single action of ejectment would determine the whole title. All the tenants can, under our practice, be sued together, and the right of the plaintiff fully vindicated in a single suit."

It will be observed that in this case the jurisdiction of the court as a court of equity was invoked on the ground that the suit would prevent a multiplicity of suits; and the court held that there was no necessity for a multiplicity of suits, although there were several defendants claiming and possessing the premises. In the case of *Nevitt* v. *Gillespie*, 26 Amer. Dec. 696, the court says:

"Courts of equity will also interpose to prevent a multiplicity of suits where the subject-matter of the contest is held by one individual in opposition to a number of persons who controvert his right, and who hold separate and distinct interests depending upon a common source."

The general language here used would seem to cover the case at bar; but a little further on in the opinion we find the following:

"The plaintiff, by its interposition, [that is, a court of chancery,] is relieved from the necessity of bringing a number of suits at law against different individuals to quiet the same common right, where each suit would establish only the particular right in question between the plaintiff and defendant in that suit."

Here we find the rule first specified based upon the idea that there would have to be a number of suits instituted to determine all the rights of plaintiff. Where this would not be the case there is no ground for equitable jurisdiction; and I do not think a case of any weight can be found which would sustain the jurisdiction of a court of equity in a case where the parties in a single action at law might be numerous. In a proper case at law, as well as in equity, a portion of the parties in interest may defend or prosecute an action for the others in interest. The practice established by the statutes and courts of Montana, in such

cases as the one at bar, has been adopted by a statute of the United States for the federal courts in this state. This view is sustained where the state practice was adopted by rule of court previous to the United States statute above referred to. *Beard* v. *Federy*, 3 Wall. 478. Nor does this practice in any way curtail the equity jurisdiction of the courts. It was not so intended. It confers no equity jurisdiction upon a law court. The object in adopting such a practice was to simplify legal proceedings. The common-law action of ejectment did not determine the title to land; and hence, after one or two trials of this nature at law, concerning a tract of land, a court of equity, with a view of preventing a multiplicity of suits, might interpose, and settle the issue once for all. Now the action under the Code practice in the nature of an action of ejectment does, where the question of title is invoked, determines and settles it between the parties to the action, and there is no necessity for a court of equity to interfere. The perfecting of legal proceedings has often done away with the necessity of a resort to equitable remedies. It may be doubted whether the case at bar should be classed as one which would give a court of equity jurisdiction with a view of preventing a multiplicity of suits, even should the plaintiff have to bring an action against each one claiming title to the land in controversy. The supreme court of California, in the cases of *Ritchie* v. *Dorland*, 6 Cal., of opinion page 40, and in *Knowles* v. *Inches*, 12 Cal. 213, did not think it would; but that point I am not called upon to decide. If the land is unoccupied I see no reason why the plaintiff cannot take possession of the same, and then bring the appropriate action to determine the title to the same. The great hardship which would be devolved upon plaintiff if it should be compelled to take possession of its lands before bringing such an action as this was alluded to by counsel for plaintiff. This hardship was based upon the extended landed possessions of plaintiff. I know of no rule of law which would allow plaintiff, on account of its extended landed possessions, to invoke any rule of practice in this matter different from a person of limited domain. Perhaps the rule in a court of equity, which denies its right to determine an adverse title to or remove a cloud upon land where the land is vacant and unoccupied, should be changed in Montana, as it has in many states, by statute law. Until this is done I do not see how I can disregard the well-established rules of equity jurisdiction upon this point.

There is another point worthy of consideration in considering the question of multiplicity of suits. The action usually called "ejectment" lies on behalf of a plaintiff against a defendant who withholds from him the possession of real estate to which he is entitled. The bill in this case shows upon its face that only two of the defendants named, and none of the one hundred and fifty who it is alleged claim some interest in the premises described in the bill, are withholding from plaintiff any portion of said premises. The only actions at law which the plaintiff has concerning these premises, then, are two,—hardly enough to be called such a multiplicity of suits as to demand the intervention of a court of equity. For the reasons stated above I do not think the bill shows any

equity. Where a bill fails to state facts sufficient to present **a** case within the equitable jurisdiction of the court the United States courts have held that a court of equity is without authority to determine anything further in the case than its own jurisdiction. The demurrer in this case is sustained.