## NORTHERN PAC. R. CO. *v.* AMACKER *et al.*

*(Circuit Court of Appeals, Ninth Circuit.   January 25, 1892.)*

1. QUIETING TITLE—PLEADING—POSSESSION.
    A bill to quiet complainant's title to 160 acres of land platted by defendants as an addition to a city averred that complainant "is seised thereof in fee-simple," that eight lots thereof were in possession of two defendants, and the balance "is vacant, unimproved land." *Held*, that the averments should be construed together, and meant that complainant was seised in law and not in fact, and therefore not in actual possession of the land, and, under Code Civil Proc. Mont. § 366, providing that an action may be brought by any person "in possession" to determine adverse claims, that the bill was bad on demurrer.

2. SAME—MULTIPLICITY OF SUITS.
    Such bill will not be sustained on the ground of avoiding a multiplicity of suits, it appearing that only two defendants are in possession claiming title and exercising ownership, nor will it be sustained on the ground of the extensive land possessions of complainant under a land grant, and the hardship of taking possession of all such lands before bringing suit.

46 Fed. Rep. 233, affirmed.

Appeal from the Circuit Court of the United States for the District of Montana.

In Equity. Bill by the Northern Pacific Railroad Company against Maria Amacker and others, to quiet complainant's title to certain lands. Complainant appeals from a decree sustaining defendant's demurrer to the complaint and dismissing the complaint. Affirmed.

F. N. Dudley, for appellant.

Massena Bullard and Thomas C. Bach, for appellee.

Before HANFORD, HAWLEY, and MORROW, District Judges.

MORROW, District Judge. This is a suit in equity seeking a decree declaring that the defendants have no estate or interest whatever in or to certain lands and premises in Montana claimed by the complainant, that the title of the complainant is good and valid, and that the said defendants be forever enjoined and restrained from asserting any claim in or to said lands or premises adverse to the complainant. The land is described as the W. ½ of the N. W. ¼, S. E. ¼ of the N. W. ¼, and S. W. ¼ of N. E. ¼, of section 17, township 10 N., of range 3 W., principal meridian of Montana. The complainant claims title to this land under the act of congress approved July 2, 1864, providing for the creation and organization of the Northern Pacific Railroad Company, and granting to the company every alternate section of public land not mineral, designated by odd numbers, to the amount of 20 alternate sections per mile on each side of said railroad line through the territories of the United States, and 10 alternate sections of land per mile on each side of said railroad wherever it passes through any state, and whenever on the line thereof the United States has full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land-office.

The bill alleges that the complainant duly accepted the conditions and impositions of the said act, and fixed the general route of its road through the territory of Montana, February 21, 1872, and on July 6, 1882, it definitely fixed the line of its said railroad extending opposite to and past the land in controversy, and thereafter constructed and completed that portion of its railroad along said line of definite location; that the land involved in this suit is within 40 miles of complainant's line of road, and that said land was, at the date of the fixing of the general route on February 21, 1872, and at the date of fixing the definite line of the road on July 6, 1882, public land, to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights. This allegation is modified by the statement that in 1868 certain persons filed declaratory statements under the provisions of the laws of the United States granting pre-emption rights to settlers on the public domain, whereby they made pre-emption claims to the various subdivisions of the land in question; that one A. J. Witter filed one of said

declaratory statements May 13, 1868, claiming the N. W. ¼ of the N. W. ¼ of said section 17; that one William M. Scott filed another of said declaratory statements October 5, 1868, claiming the S. ½ of the N. W. ¼ of said section 17; that one Jerome S. Glick filed another of said declaratory statements November 27, 1868, claiming the W. ½ of the S. E. ¼, the S. W. ¼ of the N. E. ¼, and the S. E. ¼ of the S. W. ¼ of section 17, and Robert C. Wallace filed another of said declaratory statements December 13, 1869, claiming the S. W. ¼ of the N. E. ¼ of said section 17; but it is alleged that the said claimants did not at any time inhabit or improve the lands so claimed, or erect dwellings thereon; that in February and March, 1868, all the lands in said township 10 N. of range 3 W. of principal meridian of Montana were surveyed by and under the direction of the United States surveyor general of the district of Montana, and return made of the official plat of said survey to the commissioner of the general land-office at Washington, D. C., and on July 23, 1868, the same was regularly filed in the land-office at Helena, Mont., and that by said survey it was determined that said land was agricultural, and not mineral, in character. It is further stated that notice of fixing the general course of complainant's road was not received at the land-office at Helena, Mont., until May 6, 1872, at which date there was received from the commissioner of the general land-office a diagram, showing that portion of the line of general route of said railroad extending through said land-district, together with an order instructing the land-officers to withdraw from sale, pre-emption, or other entry, all public lands in odd-numbered sections within 40 miles on each side of the line of general route of said railroad; that prior to the receipt of said diagram and order of withdrawal at the land-office at Helena, to-wit, on May 3, 1882, one McLean applied under the homestead act of May 20, 1862, to enter the said subdivision of section 17 as a homestead, and he thereupon made an affidavit, as required by law, and filed the same with the register of the land-office and paid the receiver the sum of $10; but it is alleged that McLean did not then nor at any time reside upon or cultivate said land for the term of five years, or for any time whatever; that in 1879, pursuant to a circular of instructions issued by the commissioner of the general land-office, the register and receiver of the land-office at Helena notified McLean to appear and show cause within 30 days why said entry should not be canceled for failure to make proof of compliance with the provisions of the homestead law; that, McLean failing to respond to said notice, the commissioner of the general land-office, on September 11, 1879, canceled said entry; that about August 20, 1882, McLean died, leaving a widow, Maria McLean, who on March 15, 1883, made application to purchase said land under the provisions of the act of congress approved July 15, 1880; that the commissioner of the general land-office allowed said purchase to be made, whereupon the complainant appealed from said action to the secretary of the interior, who held that the land was excepted from the grant to the Northern Pacific Railroad Company, and allowed the applicant to purchase the land, and thereafter, on or about

June 17, 1887, the United States issued to said Maria McLean its patent for said land; that after the death of McLean, his widow, Maria McLean, married John J. Amacker, one of the defendants in this suit; that the defendants claim title under said United States patent to Maria McLean, and by reason of the issuance of said patent to her the United States refuses to issue to complainant a patent for said land. The complainant alleges that certain of the defendants have caused said land to be surveyed into town-sites, with blocks, lots, streets, and alleys, filed the plat of said town-site in the office of the county recorder for the county of Lewis and Clarke, as an addition to the city of Helena, and dedicated said streets and alleys to the public use, said addition to be known as "McLean Park Addition to Helena;" that two of the defendants are in possession of, and claim title to, eight of said lots, but that the remainder of said land is vacant, unimproved land, and that the complainant is seised thereof in fee-simple; that the premises are of the value of $30,000.

To this bill defendants demurred, on the ground that by the plaintiff's own showing it was not entitled to the relief prayed for. The court below sustained the demurrer, and dismissed the bill. Plaintiff appealed.

The land grant of the Northern Pacific Railroad Company, under the act of July 2, 1864, was a grant of quantity to the extent of 20 alternate sections per mile on each side of the line of the road through the territories of the United States, and 10 alternate sections of land per mile on each side of the road whenever it should pass through a state. This grant was, however, subject to diminution in quantity within these limits by reason of the fact that when the line should be definitely fixed the United States might not have full title to all the odd-numbered sections within the limits of the grant. These particular sections might not all be free from pre-emption or other claims or rights, and some might be reserved, sold, granted, or otherwise appropriated. This probable loss to the railroad company of land in place within these primary limits was anticipated by congress, and to make good such deficiency, and relieve claimants under the public land laws of the United States from controversies with the railroad company concerning the validity of their claims, provision was made for compensating the company for such loss within the limits of an additional or indemnity grant. It was accordingly provided in section 3 of the act of July 2, 1864, that whenever, prior to the time when the line of the road should be definitely fixed, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or preempted, or otherwise disposed of, other lands should be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than 10 miles beyond the limits of said alternate sections. By joint resolution of May 31, 1870, these indemnity limits were extended by congress 10 miles further on each side of the road, making what has been known and designated as the "Second Indemnity Limits." The

grant was, therefore, not only one of quantity, but it was also in the nature of a float, to be located within the limits of certain exterior boundaries, containing such a number of odd-numbered sections as would enable the company to obtain by selection within such exterior boundaries the full quantity of land granted.

The title of the company to lands within the primary limits attached to specific odd-numbered sections as soon as they were capable of identification by the fixing of the definite line of the road opposite to them, and the filing of a plat thereof in the office of the commissioner of the general land-office. *St. Paul & P. R. Co.* v. *Northern Pac. R. Co.*, 139 U. S. 1, 11 Sup. Ct. Rep. 389. The right of the company to lands within the indemnity limits, selected in lieu of lands lost in place within the primary limits, attached at the date of the selection of such lands for that purpose. *Ryan* v. *Railroad Co.*, 99 U. S. 388. The land in controversy in this suit is part of an odd-numbered section within the primary limits of this grant, and, although it was lost to the complainant, so far as the action of the land department of the government was concerned, by the issuance of the patent to Maria McLean on June 17, 1887, it is nowhere alleged in the bill that this quantity of land has been wholly lost to complainant by reason of such action. This suit was not commenced until September 4, 1890, or more than three years after the patent was issued to Maria McLean. This period certainly afforded ample time to enable the complainant to make selection of a like quantity of land within the indemnity limits, to make good the loss.

It will be observed that the claim of Maria McLean was contested by the complainant before the secretary of the interior, and that the patent was not issued to her until after that contest had been decided by the secretary in her favor, and adversely to the complainant. By reference to the indemnity clause of section 3 of the act of July 2, 1864, we find that selections of land by the railroad company in lieu of lands lost in place are directed to be made under the direction of the secretary of the interior. The same officer who determined that this land did not belong to the complainant is charged with the duty of withdrawing from other disposition a sufficient quantity of lands within the indemnity limits to make good those lost in the granted limits. *Prest* v. *Railroad Co.*, 2 Dec. Dep. Int. 508. Pursuant to this authority, the secretary of the interior has from time to time directed the commissioner of the general land-office as to methods of procedure that would secure the adjustment of complainant's grant at the earliest possible time, and provide for the opening to settlement, as speedily as possible, of all lands within the indemnity limits of such grant not actually required to supply the lands lost in place within the original granted limits. 4 Dec. Dep. Int. 90; *Darland* v. *Railroad Co.*, 12 Dec. Dep. Int. 196. Moreover, congress, by the act of March 3, 1887, directed the secretary of the interior to immediately adjust, in accordance with the decisions of the supreme court, each of the railroad land grants made by congress to aid in the construction of such railroads. These measures have all been taken for the express purpose of expediting the set-

tlement and adjustment of all claims involved in the grants to the railroads, whether within the original or indemnity limits.

We think the acquiescence of complainant with the decision of the secretary of the interior for a period of more than three years, under the pending conditions, raises a presumption that it has made a selection of lands in the indemnity limits in lieu of those described in the patent to McLean. If it has, the most that can be said is that, under the terms of the grant, the complainant has the legal title to the land involved in this suit, and this is not sufficient. In *Lewis* v. *Cocks*, 23 Wall. 466, it was held "to be the universal practice of courts of equity to dismiss the bill, if it be grounded upon a merely legal title. In such a case, the adverse party has a constitutional right to a trial by jury.". But if, on the other hand, no indemnity selection has been made, then the injury complainant has sustained by reason of the loss of this portion of its grant should be made to appear in the bill by proper averment. It is proper to say here that this defect in complainant's bill was not suggested either in the court below or upon the argument in this court. We will therefore proceed to consider whether the bill states facts sufficient in other respects to show a right to appeal to a court of equity for the relief prayed.

The bill alleges that two of the defendants are in possession of eight of the lots in the town-site into which the land has been divided. It asserts, in effect, that the complainant is the owner of the legal title to the whole tract, but it does not claim possession to any part of it, unless the averment that the complainant "is seised thereof in fee-simple" may be construed as alleging such a claim to the remainder of the land not admitted to be in possession of the two defendants. But this averment is qualified by the further allegation that the land to which it refers "is vacant, unimproved land." "There is a seisin in deed, and a seisin in law; and the difference between the two is that in one case an actual possession has been taken, and in the other there is a right like that of an heir upon descent from an ancestor, while the possession is vacant, before he has made an actual entry." 3 Washb. Real Prop. 138. The averments of the complaint, construed together, must be taken as meaning that the complainant is seised in law, and not in deed, and is therefore not in actual possession of the land.

This brings us to a question, whether it is necessary for the complainant in a suit of this character to show by an averment in the bill that he is in possession of the premises. In *Orton* v. *Smith*, 18 How. 265, the supreme court declared the rule to be that "those only who have a clear legal and equitable title to land connected with possession have any right to claim the interposition of a court of equity to give them peace or dissipate a cloud on title." In *U. S.* v. *Wilson*, 118 U. S. 86, 6 Sup. Ct. Rep. 991, the suit was in equity to have the conveyance of an adverse title declared fraudulent and void, and removed as a cloud on complainant's title. The court said:

"Having the legal title, then, but being kept out of possession by defendants holding adversely, the remedy of the United States is at law to recover possession. Equity in such cases has no jurisdiction, unless it is required to

remove obstacles which prevent a successful resort to an action of ejectment, or when, after repeated actions at law, its jurisdiction is invoked to prevent a multiplicity of suits, or there are other specified equitable grounds of relief. Bills *quia timet*, such as this is, to remove a cloud from a legal title, cannot be brought by one not in possession of the real estate in controversy, because the law gives a remedy by ejectment, which is plain, adequate, and complete. This is the familiar doctrine of this court."

This doctrine was again declared in *Frost* v. *Spitley*, 121 U. S. 552, 7 Sup. Ct. Rep. 1129, where the court said:

"A person out of possession cannot maintain such a bill, [a bill to remove a cloud upon title, and to quiet the possession of real estate,] whether his title is legal or equitable; for if his title is legal, his remedy at law, by action of ejectment, is plain, adequate, and complete; and if his title is equitable, he must acquire the legal title, and then bring ejectment."

The case of *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495, was a bill in equity to quiet title, founded upon a statute of Nebraska, which provided—

"That an action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest thereon, for the purpose of determining such estate, and quieting the title to such real estate."

The supreme court held that this statute dispensed with the general rule of the courts of equity that in order to maintain a bill to quiet title it is necessary that the party should be in possession, and in most cases that his title should have been established at law, or founded upon indisputable evidence or long-continued possession. The court, in explaining the rule of equity jurisdiction in the absence of such a statute, said:

"A bill of peace against an individual reiterating an unsuccessful claim to real property would formerly lie only where the plaintiff was in possession, and his right had been successfully maintained. The equity of the plaintiff in such cases arose from the protracted litigation for the possession of the property, which the action of ejectment at common law permitted. That action being founded upon a fictitious demise, between fictitious parties, a recovery in one action constituted no bar to another similar action, or to any number of such actions. A change in the date of the alleged demise was sufficient to support a new action. Thus the party in possession, though successful in every instance, might be harassed and vexed, if not ruined, by a litigation constantly renewed. To put an end to such litigation, and give repose to the successful party, courts of equity interfered and closed the controversy. To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential,—he must have been in possession of the property; he must have been disturbed in its possession by repeated actions at law; and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose, and grant a perpetual injunction to quiet the possession of the plaintiff against any further litigation from the same source. It was only in this way that adequate relief could be afforded against vexatious litigation, and the irreparable mischief which it entailed."

The court further explained:

"A bill *quia timet,* or to remove a cloud upon the title of real estate, differed from a bill of peace in that it did not seek so much to put an end to vexatious litigation respecting the property as to prevent future litigation, by removing existing causes of controversy as to its title. It was brought in view of anticipated wrongs or mischiefs, and the jurisdiction of the court was invoked because the party feared future injury to his rights and interests. Story, Eq. Pl. § 826. To maintain a suit of this character it was generally necessary that the plaintiff should be in possession of the property, and, except where the defendants were numerous, that his title should have been established at law, or be founded on undisputed evidence or long-continued possession."

The statute of Nebraska, as stated by the court, authorizes a suit in either of these classes of cases without reference to any previous judicial determination of the validity of the plaintiff's right, and without reference to his possession; and the bill was sustained on that ground. But there is no such statute in Montana. The only law on the subject appears to be section 366 of the Code of Civil Procedure of that state, which provides:

"An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest."

This is the language of section 254 of the old practice act of California, adopted, in 1851, and the Montana section was doubtless copied from that act; but section 254 of the act of 1851 was superseded by section 738 of the Code of Civil Procedure of California, approved March 11, 1872, which took effect January 1, 1873. The latter section provides: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim;" the provision relating to possession being omitted. During the existence of section 254 of the practice act the decisions of the supreme court of California were uniform to the effect that an action could not be maintained under its provisions for the purpose of determining an adverse claim to or estate or interest in real property unless the plaintiff, at the time of the commencement of the action, was in the actual possession of the property himself, or in possession by his tenant. *Dunlap* v. *Kelsey,* 5 Cal. 181; *Ritchie* v. *Dorland,* 6 Cal. 33; *Mining Co.* v. *Fremont,* 7 Cal. 319; *Rico* v. *Spence,* 21 Cal. 504; *Lyle* v. *Rollins,* 25 Cal. 437; *Ferris* v. *Irving,* 28 Cal. 645. To the same effect is *Coolidge* v. *Forward,* (Or.) 2 Pac. Rep. 292. In *Curtis* v. *Sutter,* 15 Cal. 259, it was held that this section enlarged the class of cases in which equitable relief could formerly be sought in quieting title. It authorized the interposition of equity in cases where previously bills of peace would not lie, and it was explained that under this statute it was unnecessary for the plaintiff to delay seeking the equitable interposition of the court until he had been disturbed in his possession by the institution of a suit against him, and until judgment in such suit had passed in his favor. It was sufficient if, while in possession of the property, a party out of possession claimed an estate or interest adverse to him. It

will be observed that while it was determined that this section enlarged the equitable jurisdiction of the courts in cases formerly reached by bills of peace and *quia timet,* it still required that the plaintiff should be in possession of the property to enable him to seek such relief. Where a different rule has obtained, it has been under a statute similar to the one in Nebraska. Section 738 of the present Code of Civil Procedure of California is such a statute, and under its provisions the plaintiff out of possession, but claiming an estate in real property, is enabled now to proceed in equity to remove a cloud therefrom, or quiet the title to the same, as was decided in *Holland* v. *Challen, supra,* with respect to the statute of Nebraska.

The case of *Southern Pac. R. Co.* v. *Wiggs,* 43 Fed. Rep. 333, was brought under the provisions of this statute, and, although the question of possession was apparently not in controversy, its existence explains the position taken by the learned judge in sustaining the equitable jurisdiction of the court. But it is urged that the sufficiency of this bill must be considered with reference to the allegation that the complainant can have no adequate relief except in a court of equity. Section 723 of the Revised Statutes of the United States provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." It has been decided that this provision is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedies, but only expresses the law which has governed proceedings in equity since their adoption in the courts of England.

In the case of *Whitehead* v. *Shattuck,* 138 U. S. 151, 11 Sup. Ct. Rep. 277, the supreme court said:

"It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said: that where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."

In the case at bar two of the defendants are in possession of certain subdivisions of the tract in dispute. As against them, upon the facts stated, a suit of ejectment would afford a plain, adequate, and complete remedy. If the remainder of the land is unoccupied, as alleged, we see no reason, as was said by the learned judge in the court below, why the complainant cannot take possession of the same, and then bring the appropriate action to determine the title to the same. The extensive land possessions of the complainant, and the hardship of taking possession of its lands before bringing such an action, cannot properly be considered in this case. The land involved in this suit amounts to about 160

acres. There can hardly be -any difficulty in taking possession of an unoccupied tract of land of such dimensions, located as this is; and we are not at liberty to import into this case considerations respecting other tracts that may be involved in like·controversy and embraced in complainant's grant of 45,000,000 of acres.

It is further argued, in favor of the equitable jurisdiction claimed for this case, that it will avoid a multiplicity of suits. But it appears that only two of the defendants are in possession, claiming title and exercising ownership as to eight lots. It would certainly not require more than one suit to determine their right of possession, and indeed the law is well settled that, under the practice act adopted in Montana, the plaintiff in an action in the·nature of ejectment may join any number of defendants without regard to the extent or character of their possessions. *San Francisco* v. *Beideman,* 17 Cal. 461. It appears, therefore, that the bill does not present a case coming within the equity jurisdiction of the court.

The decree of the circuit court is therefore affirmed.