## SMYTH *v.* NEW ORLEANS CANAL AND BANKING COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 75. Submitted November 5, 1891. — Decided November 23, 1891.

The plaintiff in his bill set up in himself a legal title to real estate derived from the State of Louisiana to which it had been listed as swamp or over-flowed lands; averred that the respondents claimed the same land under certain old French grants which had been recognized by the Land Office as valid; and prayed that he might be declared to be the owner and put in possession of the premises, and have an accounting for rents and profits. *Held*, that on these averments he had a plain, adequate and complete remedy at law, and that the bill must be dismissed.

THE court stated the case as follows:

The controversy involved in this suit arose from conflicting claims of the parties to lands in the suburbs of New Orleans, alleged to be of great value. It seemed from the opinions of the Secretaries of the Interior presented on the hearing, that no regular survey by the Land Department of the government was extended over the city and its suburbs prior to 1871. The surveys previously made were only such as were required to ascertain the boundaries of old grants from the Spanish or

French government.   But in 1871 and 1872, under the direc-
tion of the Land Department, surveys were extended over the
city and adjoining country to Lake Ponchartrain, and town-
ship maps of the same were prepared and approved.   One of
the townships described as township twelve south, range eleven
east, disclosed various lands which, being low and wet, fell
under the designation of swamp or overflowed lands covered
by the swamp-land grant to the State of 1849, and they were
listed to the State.   Within the township there were extensive
improvements, consisting of railroads, gardens, race courses,
cemeteries and buildings of various kinds, such as are usually
found in the neighborhood of a large city.

When it became known that the lands of the township were
held by the Land Department to belong to the State, and,
therefore, were open to sale, many parcels were entered by
different parties, the complainant in this case being one of
them.

It subsequently appeared that certain ancient grants cover-
ing the premises, alleged to have been made by the former
governments of Spain and France, were brought forward by
one of the defendants in this case, the New Orleans Canal and
Banking Company, which claimed under them, for itself and
its vendees, title to the lands.   Proceedings were then taken
to obtain a reconsideration of the action of the Land Depart-
ment, a resurvey of the city and suburbs, and an annulment
of the listing of the lands in township 12, south, to the State,
as swamp and overflowed.

It would serve no useful purpose to detail at length the
various proceedings had under the direction of the Interior
Department exercising its supervisory authority over the
officers of the Land Department, to correct their alleged-er-
roneous action.   They are stated at length in the opinions of
the Secretaries.   It is sufficient to say that the genuineness
and extent of the ancient grants were considered and estab-
lished.   The finding of the lands as vacant swamp and over-
flowed was set aside, and the listing of the same to the State
was cancelled.

The complainant thereupon filed his bill in the Circuit Court

of the United States for the Eastern District of Louisiana, by which he seeks to have.his alleged title adjudged to be valid, and possession of the demanded premises decreed to him with the rents and profits for their unlawful use and possession. In the bill he detailed the various steps, taken through the instrumentality of the Land Department, to obtain title to the premises. He set forth that by the Treaty of Paris of April 30, 1803, with the French Republic, the whole province or Territory of Louisiana, comprising the lands designated on the official map of township 12 south, range 11 east, had been ceded to the United States; that the lands had not been previously separated from the public domain; that since their cession the United States had exercised ownership over them and Congress had passed several acts respecting them and, among others, the swamp land act of 1849; and that under them the lands had been selected and listed, as swamp and overflowed land, to the State, and he had become their purchaser. He also averred that he was the sole owner of 2295 acres of the lands by his purchase, of which he had received patents for all but 800 acres, and for this balance he had been prevented from receiving patents by the fraudulent conduct of parties claiming under pretended ancient grants. After reciting various proceedings before the Land Department and in the District Court of the United States respecting the said grants, the bill alleged that the Land Department had decided that these ancient grants were complete French grants needing no confirmation, and obligatory upon it so far as to require it to direct the public surveys to be closed on the lands covered by them. It charged that the various proceedings taken by the department in that respect were invalid and unauthorized; and that from the invalidity and unauthorized character of the proceedings the complainant's right to the lands was not defeated nor impaired. It therefore prayed that the complainant might be declared the owner and put in possession of the premises described, and have an accounting for the rents and profits.

*Mr. J. Ward Gurley, Jr.,* for appellant.

The facts charged in the bill fully justify maintaining the suit on the equity side of the court. Complainant has not an *adequate* remedy at law. Although complainant may have a legal title, it is not a *complete* legal title to all the lands, and he charges acts of fraud against one of the defendants which have prevented and still prevent him from completing his title to a portion of the lands, and which threaten to injure his title to all the lands. This entitles him to the assistance of a court of equity. *Boyce* v. *Grundy*, 3 Pet. 210, 215. The multiplicity of suits which would be necessary at law is sufficient to maintain the equity jurisdiction. *Crews* v. *Burcham*, 1 Black, 352, 358. At law a separate suit against each defendant would be necessary.

The facts set forth in the bill show that the Banking Company has for fourteen years been harassing complainant and casting clouds upon his title by claiming title under "pretended, false, fraudulent and invalid grants," and by a continued "fraudulent attempt to manufacture a title to said lands," has prevented complainant from completing his legal title to portions of said land, and from obtaining the evidences of said title from the officers of the Land Department, and has caused the officers of that department to close the public surveys upon the lines of said alleged grants, to cancel complainant's patents and to declare said alleged grants to be complete French grants, needing no confirmation, in illegal violation of complainant's rights.

To stop these acts, investigate these frauds, ascertain the exact limits and location of the claim of each defendant and compel an accounting, only the equity powers of the court can afford adequate and prompt relief, without a multiplicity of suits and a great expense.

The case of *Hipp* v. *Babin*, 19 How. 271, chiefly relied upon in the opinion of the Circuit Court, differs widely from the case at bar. In that case there was no array of acts of fraud, no manufacturing of titles, no cancelling of patents, no illegal and conflicting acts and decisions of the Land Department to be reviewed and reversed, no fraudulent acts by defendants preventing complainant from completing his title,

no boundaries of defendants' respective claims to be ascertained, no multiplicity of suits to be avoided, as in the case at bar. Read in connection with the cases hereinbefore cited, the case of *Hipp* v. *Babin* but strengthens the appeal to the equity jurisdiction over the case at bar.

*Mr. Henry C. Miller* for the New Orleans Canal and Banking Company, appellee. *Mr. J. L. Bradford* for the same.

*Mr. Gus. A. Breaux* for the Metarie Cemetery Association, appellee.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

Notwithstanding the statement of the bill respecting the alleged illegal and fraudulent use of the ancient grants produced, and the alleged illegal proceedings of the department, the bill avers the possession by the complainant of a legal title to the premises. Whether that title can be enforced against other claimants will depend of course upon the validity of the ancient grants produced, and of the proceedings by which Louisiana is alleged to have acquired the property. That can be shown in an action at law as well as in a suit in equity.

If the State acquired a good title by the swamp land act of 1849, and the listing of the lands and patents to her, and she sold the premises, as alleged, to the complainant, he can recover them in an action at law, and the rents and profits accrued thereon since the defendants have been in possession, and for that purpose there is no occasion for any proceeding in equity. The 16th section of the Judiciary Act of 1789, which is carried into the Revised Statutes as sec. 723, declares that suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law. The allegations as to the illegality of the action of the Land Department, and the fraudulent proceedings of the defendants in bringing forward the pretended ancient grants, are entirely unnecessary to the

maintenance of the action. The facts upon which a title to the premises in controversy rests, or by which such title can be defeated, can be readily shown in an action at law. No discovery is necessary for the intervention of any equitable jurisdiction, nor would there be any avoiding of a multiplicity of suits by maintaining this proceeding in a court of equity. In a single action at law all the facts can be established and all the questions necessary to determine the right to the property can be considered and disposed of. The allegation of fraudulent proceedings respecting the acquisition of the title does not convert an action at law into a suit in equity. The title stated is merely legal, and as was said in the case of *Hipp* v. *Babin*, 19 How. 271, 277, where an ejectment suit in equity was sought to be sustained: "The evidence to support it appears from documents accessible to either party; and no particular circumstances are stated, showing the necessity of the courts interfering, either for preventing suits or other vexation, or for preventing an injustice, irremediable at law." See also *Scott* v. *Neely*, 140 U. S. 106, 110.

The demurrer to the bill was, therefore, properly sustained and the suit dismissed on the ground that the complainant had an adequate remedy at law, such dismissal being without prejudice to any subsequent action at law which the complainant might be advised to bring.

*Decree affirmed.*

Mr. Justice Blatchford took no part in the decision of this case.