JOHNSTON v. CORSON GOLD MINING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 4, 1907.)

No. 1,381.

1. LANDLORD AND TENANT—LEASE—TERM TO COMMENCE IN FUTURO.

A lease to commence in futuro is grantable, and the fact that a lease fixes a date in the future for the commencement of the term does not make it an executory, rather than an executed, contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 217.]

2. EQUITY—JURISDICTION—ADEQUATE REMEDY AT LAW.

A lessee of mining claims under an executed lease for a term to commence on a future date, on and after such date, although never having been in possession, may maintain ejectment against another claiming title who wrongfully withholds such possession, and, his remedy at law to obtain possession by such an action being complete and adequate, a suit in equity for that purpose and to establish his title cannot be maintained, even though other relief of an equitable nature is also prayed for, such as an injunction to prevent waste, an accounting, and the cancellation of instruments alleged to constitute a cloud on his title, which relief, if necessary or proper, must be sought by an ancillary suit in aid of his action at law.

3. QUIETING TITLE—REMOVAL OF CLOUD—NECESSITY OF COMPLAINANT'S POSSESSION.

A suit in equity cannot be maintained by one out of possession to determine title or right of possession to lands, or to remove a cloud from complainant's title against a claimant in possession.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Quieting Title, §§ 8–11, 44, 45.

Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

Appeal from a judgment dismissing an action brought on the equity side of the District Court of the District of Alaska, Second Division. Plaintiff's bill alleges substantially these facts: That prior to and on May 9, 1906, the Universal Mining Company was and is the owner of certain described mining claims in the Nome District of Alaska; that it became owner by a deed of conveyance duly made and delivered to it by the defendant Corson Gold Mining Company, dated January 17, 1906, and filed for record in the proper district on April 24, 1906; that title to the said mining claims held by the Corson Gold Mining Company before the delivery of the deed to the Universal Mining Company was a possessory mining title, by force of location theretofore made, and subsequent conveyances to the said Corson Mining Company of an undivided half of each and all the described properties, the said Corson Gold Mining Company having had prior to the delivery of the deed, and the said Universal Mining Company having thence had, the legal title to an undivided half of part of said properties, and the equitable title to a part thereof; that about May 9, 1906, at Manchester, N. H., the defendant Universal Mining Company, on the one side, and the plaintiff Johnston on the other, entered into a lease, whereby the Universal Mining Company leased its right and title to the properties involved in this suit to the plaintiff; that the lease recited that the Universal Mining Company owned a half interest in the property, and that the other undivided half belonged to one Gray, the Universal Mining Company expressly recognizing the rights of its co-tenant; that the right of entry in and upon the mining properties for the purpose of prospecting and mining gold was given; that the lease contained the following provision as to possession and terms: "It is also understood and agreed

157 F.—10

between the parties hereto that the term of this lease shall be for the period of two years beginning the 1st day of July, 1906; provided, however, that if for any reason said party of the first part shall be unable or shall refuse on said 1st day of July to deliver to the said second party herein possession of said properties, as contemplated in this lease, then, and in that case, such delay in delivery of possession shall not work an abridgment in the term of this lease, but shall operate merely to defer the date of its commencement until such date as possession may be delivered as aforesaid. The said lessor covenants and agrees to use all reasonable endeavor and legal means to put the lessee in possession of the premises above described on said 1st day of July, 1906, or as soon thereafter as possible;" that the lessor also agreed that it would not interfere with possession by the lessee as contemplated by the lease.

Plaintiff alleges that the lease was recorded in Nome on June 21, 1906, and that it has been in force ever since the execution and delivery of the same; that about June 10, 1905, at Manchester, N. H., one E. W. Spurr purported to execute, under the seal of the Corson Gold Mining Company, and as its president, a certain lease between the said Corson Gold Mining Company, defendant herein, and one Judson T. Webster, also a defendant herein; that this lease was for the same properties involved in this action; that Spurr had no authority to execute or deliver such a lease; that Webster, the lessee named therein, refused to accept the lease as drawn, signed by Spurr, or to act in accordance with the terms thereof; that between the time Webster received the lease in June, 1905, and March 16, 1906, Webster, without the consent or knowledge of the Corson Gold Mining Company, made material alterations in the lease; that Webster affixed his signature to the duplicates of the purported lease; that between September 25 and December 15, 1905, Webster sent one of the duplicates of the said purported lease, so altered by him, to an agent of his in Nome, together with a sublease from himself (Webster) to Thomas M. Gibson, a defendant herein; that the sublease covered the mining claims involved herein, together with certain other properties, and included an assignment from Webster to the said Gibson of the purported lease to the said Webster of the properties embraced in the sublease; that about December 8, 1905, Webster sent back one of the duplicate copies of the said purported lease, so altered and signed by him, to the attorney of the Corson Gold Mining Company at Manchester, with the request that the company consent to and ratify the alterations made by him in the purported lease, saying that he could not accept the said lease unless said changes therein were made, but that on December 12th the stockholders of the Corson Company considered the changes and the request of Webster, repudiated the transactions had by Spurr with Webster, and withdrew all offers of a lease to him, and notified Webster about December 13, 1905; that notwithstanding these things, Webster at some time between September 25, 1905, and March 16, 1906, delivered to the said defendant Gibson the duplicate of the said pretended lease, and the sublease and assignment, and Gibson put the same on record on March 16, 1906; and that all these things were done without the consent or knowledge of the Corson Gold Mining Company, or its officers or successors; that the defendant Gibson and the defendants Waskey and Harding, claiming an interest with Gibson, by force of transfer by him under the said purported lease, and the said sublease, entered upon the mining properties involved, in May, 1906, claiming the right to do so by virtue of the said unauthorized and fraudulent lease, and the said sublease and assignment, and began working upon the claims, and were working upon them when this action was brought, and had taken from them large quantities of gold. Plaintiff alleges that since July 1, 1906, when the terms of his said lease began, he has tried to enter peaceably upon the properties embraced in his lease, and has demanded possession thereof from Gibson, Waskey, and Harding, who were occupying and working the same, but that they refused to surrender possession, or to permit him to enter for the purposes of his said lease, or for any purpose; that the co-tenant Gray is not in possession exclusively or adversely to plaintiff or to plaintiff's lessor, nor is he mining the properties, and he does not oppose entry and mining by plaintiff; that defendants Gibson, Waskey, and Harding are accountable for all gold taken from the mining claims since July 1, 1906, or that may be taken

therefrom by them hereafter, prior to the termination of plaintiff's lease, but plaintiff, not having access, cannot ascertain the true amount of gold that has been taken; and that the defendants last named have no right of claim or possession to the said mining properties other than the void and pretended lease. It is then alleged that the defendant Willey, prior to the making of the lease to the plaintiff Johnston by the defendant Universal Mining Company, was the controlling stockholder of said corporation, and alone conducted on its part the negotiations which resulted in the making of the lease to plaintiff, and assented to the same, but that at the time of the commencement of this suit he was publicly stating that plaintiff's lease was of no validity, and that, by dealings between himself, as president of the Universal Mining Company, and himself individually, he has obtained a deed of conveyance from the company to himself individually of all of the mining claims embraced in the lease to this plaintiff Johnston, and that this deed was made without authorization by the stockholders or directors, and that if it is put on record, it will operate to cloud and embarrass plaintiff's title to his leasehold interest in the said mining property; that since July 1, 1906, when the term of the plaintiff's lease began, plaintiff has demanded of Willey, as president of the corporation, that the company and Willey, as president, put him in peaceable possession of the mining properties, in fulfillment of the covenants of the lease; but that Willey has failed to take any steps to that end, but is combining with the defendants Gibson, Waskey, and Harding to leave them in the possession and enjoyment of the properties under the alleged void lease to the defendant Webster; that the record of the void lease to Webster, and Webster's sublease and assignment to Gibson, constitute a cloud upon plaintiff's title to his leasehold interest; that the defendants are not responsible financially for the value of the gold taken or to be taken; that the occupation by Gibson, Waskey, and Harding, and the taking of gold from the claims, and the exclusion of plaintiff therefrom, constitute great and irreparable injury, for which plaintiff has no adequate remedy at law; that plaintiff at great expense prepared to mine the claims from and after July 1, 1906; that the open working season is a brief one; and if the defendants shall be left in possession the claims may be wholly worked out before final decree can be obtained; and that plaintiff will be put to great additional expense unless he can enter upon and operate the claims under his lease. Plaintiff asks for a decree in his favor, adjudging that the Universal Mining Company, when it made and delivered its lease to plaintiff, was the owner of the legal possessory title to the properties described in the lease; and that on July 1, 1906, he became lawfully entitled to the possession of the properties in co-tenancy with Gray; and that the pretended lease from the defendant Corson Gold Mining Company to Webster was not authorized, and was materially altered prior to delivery without the consent of the Corson Gold Mining Company, and was and is null and void; that the defendants Webster, Gibson, Waskey, and Harding have no right under said pretended lease to the possession of the said properties, and that they have never acquired any rights by any lease or sublease, or assignment, but that the said instruments are clouds upon plaintiff's title to his leasehold interest. Cancellation of the alleged pretended lease to the defendant Webster, and the sublease thereunder, and the partial assignment to Gibson, is prayed for, and a decree is asked enjoining Gibson, Waskey, and Harding from continuing to occupy the claims, and from extracting gold therefrom, and compelling them to surrender possession to plaintiff, and requiring them to account for gold extracted; and that defendant Willey be restrained from disparaging plaintiff's title, and that he may deliver into court deeds, purporting to convey from the Universal Mining Company to himself the said mining property; and that, until final decree, restraining order be issued.

A temporary restraining order was issued, and a motion for preliminary injunction was heard. The plaintiff filed several affidavits tending to substantiate the allegations of his complaint. The defendants also filed affidavits denying plaintiff's allegations as to title, and setting forth that they had been in possession since March, 1906, and had redeemed the property from a foreclosure at an expense of $10,000, and thereafter had spent large sums upon it; and that they claimed title and possession in good faith. The defendants Gibson, Waskey, and Harding filed a demurrer to the application for an injunction,

on the ground that plaintiff did not state a cause of equitable cognizance as against them. The demurrer was sustained, and injunction pendente lite was denied, for the reason that the plaintiff was not entitled to relief in equity. The bill was dismissed as against appellees, without prejudice to maintenance by plaintiff of an action at law.

Thomas R. Shepard, Shepard & Flett, and W. H. Flett, for appellant.

Charles S. Wheeler, J. F. Bowie, Gordon Hall, and Albert Fink, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge (after stating the facts as above). The important question is whether plaintiff had a plain, adequate, and complete remedy at law. If he had, then the lower court properly refused to entertain his bill as one entitling him to equitable relief, at least until after he had instituted his legal action. We have plaintiff, a lessee out of possession, knowing that defendants, third persons, were in possession, mining the property involved, and claiming right of possession, now suing in equity to establish title, to acquire possession, to cancel an instrument and remove a cloud, for an accounting, and for injunction to prevent further mining. The complaint sets forth facts which, being taken to be true, show appellees to be naked trespassers—that is, that they went upon and hold possession of the property without title, legal or equitable, in themselves or their predecessors, while plaintiff shows that he is a lessee of the owners of both legal and equitable title, and that his right of possession began on July 1, 1906, but that he has been wrongfully excluded from the property by these appellees. The contract under which plaintiff claims was an executed lease, containing among others this clause:

"Witnesseth: That for and in consideration of the rents, royalties, covenants, and agreements to be paid and performed by the said party of the second part, the said party of the first part has agreed to lease, demise, and let, and does hereby lease, demise, and let, to the said party of the second part all its right, title, and interest in and to the properties and mining claims hereinafter specifically described."

The proviso (heretofore quoted in the statement preceding this opinion), assured the enjoyment of the property by plaintiff for the full period of two years, but it did not change the character of the conveyance by making it an executory, rather than an executed, contract. A lease to commence in futuro is grantable. Whitney v. Allaire, 1 N. Y. 305; Becar v. Flues, 64 N. Y. 518. The lessee acquired an interest in the term, which he could assign, and for which he could maintain ejectment without any further act upon his part, if possession was withheld after his right of entry became complete. If the plaintiff's lessor had been in possession on July 1, 1906, and for any reason had refused to surrender possession to plaintiff, such refusal would not have operated to defer plaintiff's right of possession, notwithstanding plaintiff's enjoyment might have been postponed, and his term of two years might not have begun until after he obtained actual possession. This construction of the lease is reasonable, and appears to be in har-

mony with the whole instrument, for in another part thereof the lessor covenanted and agreed with the lessee that he would use all reasonable endeavor and legal means to put the lessee in possession "on said 1st day of July, 1906, or as soon thereafter as possible." Any doubt upon this point, however, has been resolved by the pleading of plaintiff, which is framed upon the theory that plaintiff's right of possession accrued July 1st. He claims not under an agreement for a lease, but under an existing lease, and he asks for mesne profits from July 1, 1906—profits to which he would have no claim unless his right of possession accrued at that specified date.

The estate of plaintiff as a lessee could only have been perfected by his entry, but after July 1, 1906, which was the date alleged by plaintiff for the commencement of the term, his interest as lessee was such that, though not in actual possession, still he had a present interest in the term, and could maintain ejectment. Wood's Landlord & Tenant, p. 266; Tyler on Ejectment, pp. 75, 77; Van Rensselaer v. Slingerland, 26 N. Y. 580; Adams' Equity, p. 217. In Trull v. Granger, 8 N. Y. 115, the right of possession in præsenti was held to be all that was necessary to maintain ejectment, and an entry is not necessary. And in Gardner v. Keteltas, 3 Hill (N. Y.) 332, 38 Am. Dec. 637, it was held that ejectment would lie by a lessee before entry against a stranger in possession, and wrongfully withholding from plaintiff. Plaintiff being out of possession with a right of action in ejectment, his remedy was complete and adequate against those in possession, it being indisputable that ancillary suit could be brought upon the equitable side of the court to restrain waste or destruction of the estate, pending the hearing and determination of the action at law. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113; Id., 113 U. S. 537, 5 Sup. Ct. 565, 28 L. Ed. 1116.

Where there is a legal title, and one who holds it is kept out of possession by defendants holding adversely, the remedy is at law to recover possession. "Equity in such cases has no jurisdiction, unless its aid is required to remove obstacles which prevent a successful resort to an action in ejectment, or when, after repeated actions at law, its jurisdiction is invoked to prevent a multiplicity of suits, or there are other specific equitable grounds of relief." United States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; Harland v. Bankers et al. (C. C.) 32 Fed. 305.

Plaintiff doubts whether ejectment would lie, saying that "it is very questionable whether if plaintiff should attempt to proceed in ejectment he would be able to maintain his action." That ejectment ordinarily affords ample remedy to recover mesne profits cannot be disputed; that it affords ample remedy to recover possession cannot be disputed; and that damages can be recovered in ejectment is also certain. His doubts must therefore rest upon the apprehension that in this particular case the law cannot give him all the relief he needs, because, in addition to the several kinds of relief just enumerated, he must have a decree of cancellation of the fraudulent and altered lease to Webster, and a decree of removal of the cloud created thereby upon his title, and because he must have injunction from further trespass in operating the property. It is this full relief that he prays,

seeking to justify his prayer upon the ground that, where equity takes jurisdiction, it will give such full relief, whether legal or equitable, as to all matters relating to the subject-matter of the bill, even though relief is granted in matters which would not have been the subject of equitable interposition, had they alone been the original subjects of the relief sought. Plaintiff has cited decisions holding that a bill to remove a cloud will lie, though plaintiff is out of possession, where his legal remedy is not adequate, and that ejectment is an inadequate remedy in all cases where, although plaintiff might recover possession, a void instrument or muniment of title would be left outstanding and uncanceled. Bunce v. Gallagher, 5 Blatchf. 48, Fed. Cas. No. 2,133, and Sayers v. Burkhardt, 85 Fed. 246, 29 C. C. A. 137, decided by the federal courts, are construed to sustain this proposition. The latter was a case where the object of the suit was to remove a cloud, and to set aside as fraudulent certain proceedings had in a state court, and to declare the same null and void. But the weight of decision by the federal courts is against the doctrine that appellant relies upon, in that it is well established that, where plaintiff is not in possession, and defendant is, a suit to quiet title is not within the jurisdiction of a court of equity, where other relief as well is sought. And this is true, even though a number of additional reliefs are prayed for, part of which may be included within the jurisdiction of equity.

Smyth v. N. O., C. & B. Co., 141 U. S. 656, 12 Sup. Ct. 113, 35 L. Ed. 891, cited in the opinions of many courts, is a leading case. Complainant there went into equity, asking that his title be adjudged valid, and for possession, and for rents and profits. In the bill it was alleged that certain proceedings taken by the land department of the government were invalid, and that because of the invalidity of the proceedings, complainant's right was not defeated or impaired. The prayer also asked that complainant might be declared to be the owner, and put in possession of the premises described, and have an accounting for rents and profits. An examination of the brief for the appellant in that case shows that it was forcibly urged upon the court that the bill should be maintained in equity, because there was not an adequate remedy at law, and because fraud was charged which prevented complainant from completing his title to a portion of the lands, and that a multiplicity of suits would be necessary, and that his title was threatened, and that it was the province of a court of equity to stop these acts, investigate the frauds, compel an accounting, and that equity alone could afford adequate relief. But Justice Field, for the court, said that notwithstanding the statements of the bill respecting the alleged illegal and fraudulent use of certain ancient grants, and the alleged illegal proceedings of the department, the bill averred possession by complainant of a legal title. Continuing, he said:

"Whether that title can be enforced against other claimants will depend of course upon the validity of the ancient grants produced, and of the proceedings by which Louisiana is alleged to have acquired the property. That can be shown in an action at law, as well as in a suit in equity."

It was further held that the allegations as to the illegality of the action of the land department, and the fraudulent proceedings of the

defendants in bringing forward the pretended ancient grants, were entirely unnecessary to the maintenance of the action, as the facts upon which title to the premises rested could be readily shown in an action at law. It was said that all the facts and questions necessary to determine the right to the property could be considered and disposed of in a single action at law, and allegations of fraudulent proceedings, respecting the acquisition of the title, did not convert the action at law into a suit in equity. Boston & Montana Min. Co. v. Mont. Ore. Pur. Co., 188 U. S. 632, 23 Sup. Ct. 434, 47 L. Ed. 626.

In McGuire v. Pensacola City Co. et al., 105 Fed. 677, 44 C. C. A. 670 (1901), the Court of Appeals of the Fifth Circuit dismissed a bill, where the plaintiff sued in equity, praying for an injunction to restrain defendants from interfering with certain lands, or committing trespass thereon, for a receiver, for an account as to rents and profits; that the title be quieted; and that a tract of land be decreed to belong to plaintiff, together with rents and profits. The decision was that there was nothing alleged to confer jurisdiction, although the bill showed that the complainant had a legal title to the land, and that defendants had obtained possession by force, and were in possession. It was held that if the defendants were trespassers they could be joined as defendants in an action in ejectment, and that the equitable jurisdiction would not be interposed to prevent a multiplicity of suits, as each defendant had a right to submit his claim of title and right to possession to a jury. It was also argued that the court had jurisdiction in equity to inquire into the allegations made of conspiracy, fraud and violence. But the court said:

"The fact that the defendants conspired to obtain possession of the land, or committed frauds and violence to obtain possession, the complainant having the legal title and the right to possession, does not confer jurisdiction in equity of a suit to recover the lands. These wrongs on the part of the defendants do not prevent the plaintiff from recovering the lands at law in ejectment. Such averments in a bill to recover real estate and its rents, brought by a plaintiff out of possession, and having the legal title against defendants in possession, do not confer jurisdiction in equity. Smyth v. Banking Co., 141 U. S. 656, 660, 661, 12 Sup. Ct. 113, 35 L. Ed. 891. The averments that the defendants hold the lands under void judgments are without effect as conferring jurisdiction, because the judgments could as well be held void at law. Smythe v. Banking Co. (C. C.) 34 Fed. 825; Lewis v. Cocks, 23 Wall. 466, 469, 23 L. Ed. 70."

To the contention that the court had jurisdiction to quiet title from the cloud resting upon the land by the acts of the defendants, the court replied that it was well settled "that a plaintiff not in possession, having the legal title, cannot maintain a bill against defendants who are in possession to remove cloud from title."

In Hanley v. Coal Co. (C. C.) 110 Fed. 62 (1901), the relief sought was a decree establishing a right and title of plaintiff to the possession and use of lands, that a trustee be appointed to carry into effect a last will and testament, that an accounting be had, and for judgment and general relief. Judge Rogers decided that a court of equity will not take jurisdiction, at the instance of a plaintiff out of possession, to determine as between such plaintiff asserting title and a defendant in possession claiming adversely the simple and naked questions of

who holds the legal title to the land or the right to the possession thereof. He continued:

"Nor is authority required to show that in such a case as that the equity jurisdiction of the federal court would not attach because facts are stated in the bill which, in a proper case, would give the court jurisdiction, on the ground of an account between the parties, for the reason that an accounting depends upon the title or right to possession, and the jurisdiction to try the title is in a court of law. Rev. St. U. S. § 723, [U. S. Comp. St. 1901, p. 583] article 7 of the Constitution of the United States. See, also, cases cited in volume 2 of the notes of Gould & Tucker to Rev. St. U. S. § 723. Nor can the equity jurisdiction of a federal court attach to quiet title in favor of a plaintiff who is either out of possession or has not acquired the legal title, as against a defendant in possession asserting adverse title. Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201; Adoue v. Strahan (C. C.) 97 Fed. 691."

In Bearden et al. v. Benner (C. C.) 120 Fed. 690 (1903), the prayer was that complainants' title be decreed and confirmed, that a certain deed be decided to have only conveyed a life estate, that, if necessary, the deed be corrected and reformed, and thus a cloud be removed from complainants' title; that an account be had, and an order of sale be made, and that the proceeds be paid over to complainants; and that a preliminary injunction issue restraining defendant from selling or incumbering the interests claimed by the complainants. The court treated the bill as one showing that the possession of the land in dispute was held adversely to complainants, and under a claim of title to the fee in defendant. Jurisdiction was denied, the rule being upheld that "those only who have a clear legal and equitable title to land connected with possession have any right to claim the interference of a court of equity, to give them peace or dissipate a cloud on the title." Jurisdiction was also refused, notwithstanding the alleged necessity for an accounting; the court quoting from the leading case of Hipp v. Babin, 19 How. 271, 15 L. Ed. 633, where Justice Campbell, for the Supreme Court, laid down the rule that, when a party has a right to a possession which he can enforce at law, his right to the rents and profits is also a legal right, and must be enforced in the same jurisdiction. Furthermore, Judge Speer held that although the bill might have been maintained under the practice of the state of Georgia, yet that the courts of the United States, being controlled by the Constitution and the acts of Congress, cannot deprive a person of his right to a trial by jury in an action at law.

In United States Mining Co. v. Lawson et al. (C. C.) 115 Fed. 1005 (1902), Judge Marshall very clearly reviews the principal cases bearing upon the question under consideration. That was a bill brought for an injunction to restrain defendants from working on plaintiff's mining claim, and that the title of the plaintiff be quieted. The action was looked upon by the learned judge as maintainable under the statutes of the state of Utah, but, after reference to the seventh amendment to the Constitution of the United States, and to section 723 of the Revised Statutes, providing that suits in equity shall not be sustained in the federal courts where a plain, adequate, and complete remedy at law may be had, it was pointed out that there was no averment that the plaintiff was in possession, but that it appeared that the title

of the plaintiff was a legal one, and that if defendants were in possession the property could be recovered, and the title could be determined in an action of ejectment. The court said:

"It is a familiar rule that, where a part of the relief to which plaintiff is entitled is equitable, a court of equity, having jurisdiction for this purpose, will ordinarily assume jurisdiction of the entire case, and grant both the legal and equitable relief that the case demands. It is no less well settled that the right to an injunction to prevent the continuance of a wrong may be a sufficient equitable incident to give a court of equity jurisdiction of what would otherwise be a legal action. Root v. Railroad Co., 105 U. S. 207, 26 L. Ed. 975; Jesus College v. Bloom, 3 Atk. 262; 1 Pom. Eq. Jur. § 236. To have this effect, however, the equitable relief must be something more than simply in aid of a legal action or during its pendency. Courts of equity do not usually undertake to try disputed legal titles to land. American Dock & Improvement Co. v. Trustees for Public Schools, 37 N. J. Eq. 266. And before a plaintiff is entitled to a permanent injunction restraining the violation of a common-law right, he must ordinarily establish this right at law. Coke Co. v. Broadbent, 7 H. L. Cas. 601, 606. In the federal courts, at least, it is common practice to proceed in equity for an injunction to preserve real property pending legal proceedings for the determination of the title. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113; Waterloo Min. Co. v. Doe, 82 Fed. 45, 27 C. C. A. 50; St. Louis Min. & Mill. Co. of Montana v. Montana Min. Co. (C. C.) 58 Fed. 129; Stevens v. Williams, 5 Morr. Min. Rep. 449."

Decisions within this circuit are to the same effect. In Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230 (1901), the prayer was for a temporary injunction restraining defendants from boring wells and removing oil, and for a decree that complainant had full, complete, and equitable title to the premises involved, that a receiver be appointed, and that adverse claims of defendants be adjudged without right. This court held that the circuit court had no jurisdiction to try the title to the property, or to judge the complainant to be entitled to the possession thereof. The cases of Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, and Black v. Jackson, 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801, were quoted from, to sustain the general rule that equity will not proceed to determine title or right of possession to lands brought by one who is out of possession against a claimant in possession. Davidson v. Calkins (C. C.) 92 Fed. 230, wherein Judge Wellborn ably reviews the decisions of the Supreme Court, was cited with approval. Cal. Oil & Gas. Co. of Ariz. v. Miller et al. (C. C.) 96 Fed. 12.

In Morrison v. Marker (C. C.) 93 Fed. 692 (1899), a decree was asked adjudging a deed to be fraudulent and void, and that it be canceled, that complainant be adjudged to have a good and valid title, and that the title of complainant be quieted. Judge Morrow, sitting in the Circuit Court, decided that there was not a case stated within the equity jurisdiction of the court, and quoted with approval from Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010, where it was held that a person out of possession cannot maintain a bill to remove a cloud upon title, and to quiet the possession of real estate, whether his title is legal or equitable, for if his title is legal, his remedy is by action of ejectment, and, if equitable, he must acquire the legal title, and then bring ejectment.

In Northern Pacific Railroad Company v. Amacker, 49 Fed. 529, 1

C. C. A. 345, this court again sustained the general rules as heretofore stated. That was a suit seeking a decree declaring that defendants had no estate in certain lands claimed by the complainant, that the title of the complainant was good, and praying that the defendants be enjoined from asserting claim to the lands, adverse to the complainant. Equity jurisdiction was denied. To like effect is Southern Pacific Railway Co. v. Goodrich (C. C.) 57 Fed. 879 (1893).

Similar questions were also involved in Empire State, Idaho M. & D. Co. v. Bunker Hill S. M. & C. Co., 121 Fed. 973, 58 C. C. A. 311 (1903). Bill in equity was brought by the Empire State Company to quiet title to a certain mining claim. The controversy related to extralateral rights. It was contended that possession of the property did not appear to be in the appellee, but the bill alleged that the appellee was in possession of all of the lode or vein, which extended beyond a certain plane, and within vertical planes of projected end lines. The court expressly regarded that as an averment of possession of all that part of the lode which was in controversy, and, when the point of possession was settled, proceeded to show that a trespass and threat to continue to extract ore were alleged, wherefore it was held equity would intervene.

Among the decisions by courts of the states, that of Mary Ann Long's Appeal, 92 Pa. 171, bears closely upon the case under consideration. There the subjects of the bill in equity were leasehold estates. Fraud and conspiracy were set up, and nine kinds of relief were asked, including injunction, accounting, and that the interests claimed by plaintiff be declared his. The court held the case as properly in ejectment, looking upon it as one where plaintiff was really seeking to establish his title against defendant in possession. "Her title," said the court, "may be worthless, but she has possession, and until he proves, by an action at law, that he has the right to that possession by virtue of good title, she cannot be disturbed. Haggin v. Kelly, 136 Cal. 481, 69 Pac. 140.

Appellant relies largely upon the recent case of Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, as being direct authority that equity will retain his bill. The facts there presented an unusual case for injunctive relief, and the court, Judge Hook dissenting, held that as the injury was to the res, equity had jurisdiction not only to restrain waste or threatened trespass, but having acquired jurisdiction might proceed "to settle the question of title, and to remove the cloud." The doctrine thus expressed was applied to a very unusual condition of facts, and unless its meaning is circumscribed by the peculiar features of the case, it would appear to be an extension of equitable jurisdiction beyond the rule of decision of this circuit, and of other circuits, as laid down in Kellar v. Craig, 126 Fed. 630, 61 C. C. A. 366, and other federal cases already cited.

It results from what we have said that, inasmuch as plaintiff has a complete remedy at law, his position invoking the general equity powers of the court cannot be upheld. Bruce v. Murray, 123 Fed. 366, 59 C. C. A. 494. Manifestly, the principal issue involved in the case, and the one that should be first tried, is right of possession against defendants in possession, and defendants have a right to stand on their pos-

session until compelled to yield to better title, and to demand trial by jury as to whether plaintiff has a true title. Fussell v. Gregg, 113 U. S. 554, 5 Sup. Ct. 631, 28 L. Ed. 993.

As plaintiff claims no special rights under the Alaska Codes, other than such as he is entitled to under general equitable principles, which it may be assumed are not narrowed by the Codes, it is unnecessary to consider the argument of the appellees to the effect that under Alaska Code Civ. Proc. §§ 301, 475, courts of equity will not determine questions of title and right of possession at the instance of one out of possession, in an action brought by such person against one in possession.

The order dismissing the bill without prejudice to an action at law is affirmed.