HOBE–PETERS LAND CO. v. FARR et al.

(Circuit Court, W. D. Wisconsin. June 23, 1908.)

No. 84.

1. TAXATION (§ 799*) — TAX TITLE — QUIETING TITLE — EQUITY JURISDICTON — ADEQUATE REMEDY AT LAW.

A federal court of equity has jurisdiction of a suit authorized by a statute of the state by an assignee of a mortgage who has foreclosed the same and received a certificate of purchase to the mortgaged property to cancel tax deeds thereon, and establish and quiet his own title, although out of possession which is constructively in defendants, where under the state law he cannot obtain the legal title until an action against the defendants would be barred by limitation, and has therefore no adequate remedy at law.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1585; Dec. Dig. § 799.*]

2. COURTS (§ 312*) — JURISDICTION OF FEDERAL COURT — SUIT BY ASSIGNEE — "SUIT TO RECOVER CONTENTS OF CHOSE IN ACTION."

Such a suit is not one to recover the contents of a chose in action within the meaning of the federal judiciary act (Act March 3, 1875, § 1, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508]), and the fact that the assignor of the mortgage could not have sued thereon in the federal court does not deprive it of jurisdiction therein.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 871; Dec. Dig. § 312.*]

3. MORTGAGES (§ 13*)—VALIDITY—TITLE OF MORTGAGOR.

An outstanding tax deed to land does not affect the validity of a mortgage made thereon by the general owner and containing covenants of warranty where such mortgagor subsequently acquired the tax title.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 15; Dec. Dig. § 13.*]

4. JUDGMENT (§ 683*)—PERSONS CONCLUDED—DECREE CONSTRUED.

A decree foreclosing a tax deed under St. Wis. 1898, §§ 1197–1210, which by its terms barred the defendants, including a mortgagee, and all persons claiming under them after the filing of the lis pendens, of any interest in the property, following the terms of section 1206, does not conclude one claiming under such mortgagee by an assignment made before

the suit, but not recorded, who was not made a party, although the fact of the assignment was known to the plaintiff.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1206; Dec. Dig. § 683.*]

5. COURTS (§ 371*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION.

Where a state statute requires the repayment of all taxes with a certain rate of interest as a condition precedent to relief against a sale for taxes, such condition will be enforced in a federal court.

[Ed. Note.—For other cases, see Courts. Cent. Dig. § 972; Dec. Dig. § 371.*

State laws as rules of decisions in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

Reid, Smart & Curtis, for complainant.
Wickham & Farr, for defendants.

SANBORN, District Judge. This is a bill filed by the assignee of a mortgage, and holding only an equitable title, against a number of defendants asserting title under tax deeds regular on their face, and carrying constructive and adverse possession of the lands covered by them, to establish the title and interest of complainant against the claims of the defendants, to bar defendants against having or claiming any right or title to the lands adverse to complainant, and to cancel said tax deeds and a judgment of foreclosure brought under the state statute to bar the original owners of the lands covered by the tax deeds, also to recover damages for injury to the premises and to obtain a preliminary injunction against waste or damage to such lands.

At the outset two objections going to the jurisdiction are raised: One of these objections is to the jurisdiction to the court as a court of equity, on the ground that the complainant has an adequate remedy at law by ejectment, and, although it has no title to the lands, yet it must obtain such title and sue in ejectment, and cannot, in any event, bring suit to establish its title in a court of equity, notwithstanding that such a remedy is given by the statute of Wisconsin. The statute referred to is section 3186, St. Wis. 1898, the last sentence of which reads as follows:

"And any person not having such title or possession but being the owner and holder of any lien or incumbrance on land, shall also have the same right of action as the owner in fee to test the legality and validity of any other claim, lien or incumbrance on such land or any part thereof."

The objection made to the general jurisdiction of the court is that inasmuch as the tax deeds carry the constructive or presumtive possession of the land, and the defendants must, therefore, be deemed to be in possession, a court of equity cannot take jurisdiction by the rule laid down in the case of Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010, where it is held that a person out of possession cannot maintain a bill to remove a cloud upon a title and quiet the title, whether his title is legal or equitable; for, if his title is legal, his remedy at law by ejectment is plain, adequate, and complete, and, if his title is equitable, he must acquire a legal title and then bring ejectment. The case of Morrison v. Marker (C. C.) 93 Fed.

692, is also relied on, where it was held that the purchaser of real estate at execution sale, who was not in possession, cannot maintain a suit in equity to set aside a prior conveyance made by the judgment debtor in fraud of creditors, as a cloud on the title of complainant, although such a suit was permitted by the state statute. The cases on this subject are extensively reviewed by Judge Hunt in Johnston v. Corson Mining Co., 157 Fed. 145, 84 C. C. A. 593. The case under consideration, however, seems to be distinguished from the cases cited, for the reason that complainant could not obtain a legal title before the three-year statute of limitations on the tax deeds would have run. The complainant was at the time of the filing of the bill the assignee of a mortgage, and the mortgage had been foreclosed and a certificate of sale issued and delivered thereunder, but under the statutes of the state complainant could not obtain a deed on foreclosure until after May 24, 1902, when the first of the tax deeds in question would have been of record for three years. Complainant therefore could not in any way comply with the rule laid down in Frost v. Spitley, and could not obtain the legal title in time to bring this suit with any possibility of success. It had no legal title, and therefore could not maintain ejectment, and its sole remedy was an action in equity. Under such circumstances, its remedy at law was neither plain, adequate, nor complete, and the case is an exception to the rule that a person out of possession cannot maintain a suit in equity to quiet title against a person in possession; and to the further rule that the equitable and legal titles must be joined in the complainant before beginning suit. The case falls rather within the exception established in the case of Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332. Another objection going to the jurisdiction of the federal court as such is that this suit is to recover the contents of a chose in action, and that complainant's assignor was a citizen of this state, and could not have brought the suit. As to this objection, it is clear that this is a suit to set aside tax deeds and a foreclosure decree, and it is no more a suit to recover the contents of a chose in action than an ejectment suit brought by one claiming under a patent would be a suit to recover the contents of the patent.

On the merits the facts are somewhat complicated. Complainant relies on a mortgage made April 12, 1892, for $28,000 to the Minnesota Lumber Company, recorded May 4, 1892, in the proper office. Defendants claim under a decree of foreclosure of a tax deed made to J. R. Farr May 24, 1899, and recorded the same day. If such decree binds the complainant and is valid, this suit must be dismissed. It is necessary, therefore, to examine the facts and the arguments of counsel to determine the law to be applied. The tax foreclosure suit was brought, and notice lis pendens filed, December 27, 1900. It was brought under St. Wis. §§ 1197–1210. These sections provide that the grantee of any tax deed may at any time within three years after the date of the conveyance commence an action against the person or persons owning the land described in the conveyance at the time of making the sale upon which conveyance was made, or against the person or persons claiming under such owner or owners, for the purpose of barring such former owner or owners, and those

claiming under them. The purpose of such suit is to establish the validity of the deed against those holding adverse interests. The defendants may answer, and certain defenses may be made without a deposit or payment of the taxes, but no defenses other than those specially mentioned can be set up, unless a deposit is made with the clerk of the court for the use of the complainant for the taxes on the land and 15 per cent. interest from the date of the certificate on which the deed was issued, and also all taxes paid by the complainant after that time, with interest at 15 per cent. The Farr tax deed was fair on its face, but there were certain defects in the prior proceedings which would have invalidated it had they been pleaded, and a deposit made as required by the statute. Section 1206 provides that the judgment shall forever bar the defendants and all others claiming under them, after the filing of the notice of the pendency of the action. At the time the tax foreclosure was begun, the Minnesota Lumber Company appeared from the record to be still the owner of the mortgage, but, as a matter of fact, that company had assigned the mortgage to I. B. Craig May 27, 1899, and the mortgage at that time was in the possession of the Ogema Lumber Company. This company did not represent the full equitable interest in the mortgage, but the balance of such interest was held by Craig and J. W. Murphy. The complainant in the foreclosure suit relied upon the record, and its attorney apparently acted upon the theory that it would be safe and lawful for him to make only such persons defendants as had an interest on the record. After he commenced the suit, he had some correspondence with the Ogema Lumber Company, and was informed that it was holder of the mortgage, and he suggested to it the propriety of becoming a party to the foreclosure proceeding, presumably by intervention. He did not, however, make that company a party. The complainant Farr also had notice that J. W. Murphy claimed some interest in the mortgage, but Murphy was not joined as a party. The attorney for Farr evidently relied upon section 3187, St. 1898, which provides for the filing of the notice of lis pendens in an action affecting the title to real property, and contains the following provision:

"From the time of such filing, in either case, the pendency of such action shall be constructive notice thereof to a purchaser or incumbrancer of the property affected thereby; and every purchaser or incumbrancer whose conveyance or incumbrance is not recorded or filed shall be deemed a subsequent purchaser or incumbrancer, and shall be bound by the proceedings in the action to the same extent and in the same manner as if he were a party thereto."

It is argued by the solicitor for the complainant that section 3187 has no application to the foreclosure of a tax deed, for the reason that section 1206, which is a part of the tax foreclosure statute, contains a different provision as to the effect of the decree. He invokes the ordinary rule that a special provision, relating to a particular subject-matter, supersedes a general provision relating to cases generally covering the same subject-matter; and he cites the cases of Webster v. Pierce, 108 Wis. 408, 83 N. W. 938, and Cypreanson v. Berge, 112 Wis. 260, 87 N. W. 1081. In these cases it was held that section 3187 has no application to actions of ejectment, because section 3088 contains a special and different provision relating to the effect of the

judgment. The decree made in the Farr foreclosure case provides that the Minnesota Lumber Company and all persons claiming under them after the filing of the notice of lis pendens be barred of all right, title, and interest in the said land. It will be seen that this decree does not on its face purport to bind a person like the Ogema Lumber Company, which claimed under the Minnesota Lumber Company, before and not after the filing of the notice of lis pendens, the language in the decree following the provision of section 1206, and not the provision of section 3187. Had this decree purported to bind all persons claiming under the Minnesota Lumber Company at any time, a different question as to the effect of such decree would arise.

Changes in the title of the original owner of the lands occurring prior to the tax foreclosure require notice. The original owner of the property was B. M. Holmes. The lands are in two sections, 13 and 20. On May 16, 1891, George B. Burrows took out a tax deed upon all the lands in section 13. This was before the mortgage by Holmes to the Minnesota Lumber Company, and it is claimed that that mortgage therefore does not pass any title to the lands in section 13. As to this claim, however, there seems to be no doubt that, as between Holmes and Burrows, Burrows' tax deed is merely to be regarded as a lien; it being the duty of Holmes to procure a quitclaim from Burrows, or in some way to discharge the lien of the tax deed, and on August 8, 1893, after the decree in the tax foreclosure suit, Burrows did quitclaim to Holmes all the land in section 13, except one 40 belonging to Daniel Bjorklund, who was made a party to the suit. Since no attack is made on the Burrows tax deed and the Wisconsin statute of limitations ran on that deed May 16, 1894, there would seem to be no question that Bjorklund has a good title to his 40, and that the bill of complaint as to him and his wife must be dismissed. I conclude, therefore, that the mortgage must be construed to have passed title to the lands on section 13, except the Bjorklund forty.

As to the lands in section 20, John G. Morner took out a tax deed May 22, 1894, after the mortgage of the Minnesota Lumber Company. On the 12th day of April, 1895, John G. Morner and wife made a quitclaim deed to B. M. Holmes of the land covered by the Morner tax deeds. This deed, however, has never been recorded. However, the effect of this deed was to divest the interest of Morner in the lands in section 20, and prevent the running of the statute of limitations in favor of that deed, even though it has never been recorded. Warren v. Putnam, 63 Wis. 410, 24 N. W. 58. After the Morner quitclaim, and on the 2d of January, 1901, by quitclaim deed recorded January 4, 1901, Rose Morner, sole heir of John G. Morner, quitclaimed to J. R. Farr all the lands in section 20. Presumptively Farr had no notice of the quitclaim deed from Morner to Holmes. Farr, in his answer in this case, pleads the Morner tax deed, alleges the same to be valid, and pleads the three years statute of limitations in its support. By the rule settled in the Warren Case above cited, the running of the statute of limitations was interrupted and the effect of the statute destroyed. If Farr had set up the validity of that deed and claimed as a bona fide purchaser, a different question would arise, but under the pleadings it seems clear that Farr cannot

claim by virtue of the statute of limitations, and that the Morner quit-claim to Holmes must be treated as a redemption of the lands from the tax, and as a payment of the tax represented by that deed. In respect to the position of defendants' counsel that Holmes had no title to the lands in section 13 when he made the mortgage because of the tax deed to Burrows, it further appears that the mortgage contains covenant of warranty so that any after-acquired title vesting in Holmes would inure to the Minnesota Lumber Company and its assignees.

A further question is made of one 40 of the lands, being N. E. ¼ of the N. E. ¼ of section 13. As to this 40 no original government title was vested in Holmes, but it was covered by the Burrows tax deed, and passed by the quitclaim deed from Burrows to Holmes August 8, 1893, as above referred to. There is also some testimony in the record that Holmes for more than 10 years had adverse possession of this 40 as a pasture, under color of title, having acquired and fenced 12 or 15 acres of it. This evidence, and the force of the Burrows tax deed are sufficient to bring this 40 under the lien of the mortgage the same as the other lands, so that it will be affected by the result of this case the same as other lands on sections 13 and 20. This brings the case to a consideration of the effect of the Farr foreclosure of his tax deed. If that foreclosure did not bind the complainant, its lien by mortgage is good except as to the Bjorklund 40. The invalidity of this foreclosure was fully argued on the hearing and has been to some extent reargued in the briefs subsequently submitted. Upon the record, however, I do not find it necessary to consider many of the questions raised on the argument. The decree in that case purports to bind only the Minnesota Lumber Company and all persons claiming under it, after the filing of the notice of lis pendens. As above stated, the decree follows the language of section 1206. Under the terms of that decree and the provisions of section 1206, the holder of the mortgage at the time that decree was rendered was not bound by its very terms. I assume that the Supreme Court of Wisconsin, following the analogy of the Webster Case and the Cypreanson Case, above cited, would hold that the special provisions of section 1206 apply to the case of a tax foreclosure rather than the provisions of section 3187. But, be this as it may, it seems entirely clear that the tax foreclosure decree expressly excludes the Ogema Lumber Company as well as Craig and Murphy; Craig being the assignor of the complainant. The foreclosure decree is valid as far as it goes. I think that the amendment showing due proof of service on the Minnesota Lumber Company was valid and proper. The amendment simply supplies the record showing the facts sustaining the jurisdiction. Complainant took its title through the mortgage, with notice that such amendment might properly be made so that the record might truly show the fact. I think there can be no doubt that the foreclosure decree cannot be extended beyond its terms to include parties claiming under the Minnesota Lumber Company prior to the notice of lis pendens. The result is that the foreclosure decree, by its own terms, does not bind the complainant.

The question is raised by a supplementary brief, filed by the solicitor for the defendants, whether statutory foreclosure of the Minnesota Lumber Company mortgage is valid; the foreclosure proceedings being alleged defective. It appears in the record, however, that Craig, assignee of the mortgage, conveyed the lands in suit to the complainant, and that the mortgage was properly transferred to an attorney with instructions to foreclose it, and that a certificate of foreclosure and sale under this proceeding was made December 23, 1901, to I. B. Craig, above mentioned. The quitclaim deed and the foreclosure proceedings are sufficient, even though the foreclosure be technically invalid, to vest title of the mortgage interest in the complainant.

Another question is raised by the arguments and briefs depending upon the decision in Jackson Milling Co. v. Scott, 130 Wis. 267; 110 N. W. 184. It is held in that case that a person who might have been made a party to a suit, but was not, and who is injuriously affected by the decree, must obtain his rights by a petition in that case, and cannot maintain an independent action in the same or another court to avoid the effect of such judgment or decree. Even though this rule is applicable in a suit in federal court, yet it plainly is not to be applied to a case where the judgment or decree by its own terms does not affect the interest of such third person. In this case the tax foreclosure decree is expressly limited in its effect to the Minnesota Lumber Company and all persons claiming under it, after the filing of the lis pendens, thus excluding the complainant which claims under the Minnesota Lumber Company by assignment made to its assignors prior to the filing of the lis pendens. As a condition of the relief to be decreed in favor of complainant, it will be required to pay the taxes and interest mentioned in section 1210h, St. Wis. 1898. That section provides that, in actions to cancel tax deeds or remove cloud upon title for any reason not affecting the groundwork of the tax, the complainant must pay the taxes for the land so sold, and the amount paid by the tax grantee subsequent to the sale, with interest on all such amounts at 15 per cent. from the time of payment until the money is paid into court. On the hearing I thought that rate should be 6 per cent., and that such had been the practice of the court, but I find that in all the cases in which the 6 per cent. rule was applied the objections to tax certificates affected the groundwork of the tax and validity of the assessment itself. This statute fixes the rights of the parties, and is binding on the federal courts. The statute is the measure of those rights, and in passing upon them the federal courts are required to apply the statute and decisions of the state. I think that, while section 721 of the federal statute (U. S. Comp. St. 1901, p. 581) in its terms applies only to actions at law, yet actions in equity are fully within its principle. See the discussion of Mr. Rose in his work on Federal Procedure, § 10, and cases cited. The tax deeds in this case being objected to on grounds not going to the validity of the assessment nor affecting the groundwork of the tax, the taxes involved, with 15 per cent., must be paid as a condition of relief.

This leaves for consideration only the question of the right of defendants to have the value of their improvements. I think the defendant Anderson should be allowed something for improvements. This

question is fully presented in the brief of complainant's counsel, but is not argued by counsel for defendants. In regard to the defendants Hunt and Bolander, counsel for defendants claims that they have cut timber on the lands of the value of $373.50, and that this should be offset against any sum required to be deposited by complainant on account of taxes. This question has not been argued by defendants' counsel, who may file and serve on complainant's counsel further argument on this point, and as to the value of the improvements of Anderson.